# Wheeling.

## Zane v. Fink et al.

Decided November 26, 1881.

*(Patton, Judge, absent.)

| | |
|---|---|
| 18 | 693 |
| 40 | 118 |
| 18 | 693 |
| 41 | 288 |
| 18 | 693 |
| 42 | 136 |
| 42 | 311 |
| 18 | 693 |
| 45 | 360 |
| 45 | 353 |
| 18 | 693 |
| 48 | 60 |
| 18 | 693 |
| 57 | 235 |
| 18 | 693 |
| 66 | 374 |

1. Ordinarily the decree of a court binds only the parties their privies in representation or estate; but he, who purchases during the pendency of a suit, is held bound by the decree, that may be made against the person, from whom he derives title. The litigating parties are exempted from taking any notice of the title so acquired; and such purchaser need not be made a party. This rule however is modified to a considerable extent in some cases by our statute in relation to recording *lis pendens*; and there are perhaps some other exceptions to the rule in part according to the principles governing courts of equity.

2. Although the maxim is *pendente lite nil innovetur*, that maxim is not to be understood, as warranting the conclusion, that the conveyance so made is absolutely null and void at all times and for all purposes. The true interpretation of the maxim is, that the conveyance does not vary the rights of the parties in that suit; and they are not bound to take notice of the title acquired under it; but with regard to them the title is to be taken, as if it had never existed. But this rule is also subject to the modifications and exceptions above referred to.

3. A court of equity requires the real parties in interest to bring the suit both legal and equitable, as in the case of trustees or assignees under insolvent acts or assignees in bankruptcy. And where the sole plaintiff, who originally brought the suit in his own name and not in *autre droit*, is discharged under insolvent acts and makes an assignment of his property for the benefit of his creditors, or where such plaintiff has been declared a bankrupt, the assignees must be made parties, before the suit can be further proceeded in. In such case or cases the suit does not *abate* in the strict meaning of that word, but becomes so defective, that it cannot be further proceeded with in their absence. And in some other cases where the transfer *pendente lite* is considered as a transfer by operation of law and not voluntary, perhaps the same rule should be applied.

4. When the sole plaintiff voluntarily transfers or assigns his interest in the estate or property, which is in controversy in the suit, after the suit is brought, the suit does not thereby abate, and in most cases it does not thereby become so defective, that it cannot be further proceeded with, unless such transferee or assignee is made a party to the suit, for the reason that such transferee or assignee is a *lis pendens* purchaser from the plaintiff and, as a general rule in such case, is bound by the decision of the suit, in which the estate or property transferred or assigned is in

---

*Submitted before Judge P. took his seat on the bench.

controversy. But perhaps there may be cases, where, if the sole plaintiff voluntarily transfers or assigns his interest in the estate or property, after the suit is brought, the suit will thereby become so defective, that it cannot be proceeded in to final adjudication, until the transferee or assignee is made a party by proper bill.

5. Where the sole plaintiff voluntarily transfers or assigns his interest in the estate or property in controversy in the suit, after the suit is brought, although the suit does not thereby abate, still it may be considered as having thereby become more or less defective according to the circum· stances of the case under the rules and principles governing courts of equity, and in such case the defendant may object to the cause further proceeding, unless such transferee or assignee be made a party plaintiff, and may apply to the court for an order, that such transferee or assignee proceed and file a supplemental bill in the nature of a bill of revivor within such reasonable time as shall be prescribed by the court, or that the suit will be dismissed; and due notice of the application should be given to the transferee or assignee, as well as to the plaintiff or to his counsel in the cause. The fact of such transfer or assignment may also be brought into the cause by answer properly supported, not as a matter in bar to the suit or in abatement thereof, and the defendant may proceed by rule served upon the transferee or assignee and upon the plaintiff or his counsel, as was done in this case.

6. Upon such proceedings being had, if it appear to the court, that the plaintiff has transferred or assigned his interest in the subject of the suit, the court may order, that unless the transferee or assignee do file such supplemental bill within a reasonable time thereafter, the suit shall be dismissed, &c. The court in such case should dismiss the suit, unless its order be complied with, except in a case where the cause does not appear to have become so defective by reason of the transfer or assignment, that it cannot be proceeded with, and the defendant has been in default for an unreasonable time after knowledge of such transfer or assignment in taking action for the requirement of such supplemental bill in the nature of a bill of revivor, or has otherwise waived his privilege in this respect.

7. Where the defendant in the cause obtains a rule against the plaintiff and also against the alleged assignee of the entire interest of the plaintiff in the suit, after the suit was commenced to show cause, why an order should not be entered, that the said assignee file a supplemental bill in the nature of a bill of revivor, or that the suit be dismissed, and the court discharges the rule on account of the laches, &c., of the defendant in making his objections to the cause further proceeding, and the cause is decided against the plaintiff and his bill is dismissed, the plaintiff may prosecute an appeal from such decision, although it may *prima facie* appear from the evidence, on which said rule was based, that the defendant's said objection was well founded, if it had been made in proper time, &c.

8. Under the 5th exception to the 23d section of chapter 130 of the Code, where a husband and his wife and another or others are parties to a suit,

the husband and wife are each incompetent to testify for or against each other as to any controversy, to which such other or others are parties having a material interest involved in the suit; but in any controversy or controversies between husband and wife alone, in which they alone are materially interested, involved in such suit the husband and wife are competent to testify for or against each other. To this construction there may be some exceptions, which must be passed upon, as they shall be presented.

9. Within the meaning of the second exception contained in the 23d section of chapter 130 of the Code a party testifies in his own behalf, at the time his deposition taken in his own behalf is used in a case at law or in a case in chancery, when it is read at the hearing of the cause, and not at the time when the deposition was actually taken; and if the deposition of a party is so taken and filed, whether taken and filed in the lifetime of the decedent or not, as to any communication or transaction had by him personally with a decedent, such testimony is not competent to be used or to be read on behalf of such party against a defendant, who is administrator of such decedent in a case at law or in chancery, except in a case provided for by the last clause of said second exception or the third exception contained in said 23d section.

10. Grantees are not named in the said second exception to said 23d section of chapter 130 of the Code, but still they are within the reason of it and are included in the word "assignees" therein contained.

11. The deposition of the defendant J. F., the grantee of T. F. deceased, is taken and filed and read in the cause. So far as the deposition of said J. F. speaks in regard to a conversation or transaction with said T. F., deceased, the deposition of the plaintiff J. W. Z. may be read in his own behalf, if there is nothing else in the way, in so far as it relates to the same conversation or transaction, but not as to any other conversation or transaction between the said J. W. Z. and the said T. F., deceased, under the last clause of said exception two to said section 23 of chapter 130.

12. A deed absolute on its face, if shown to have been originally a mortgage by parol proof and by the surrounding circumstances, may be declared a mortgage, though the land has passed into the hands of a grantee, who paid no consideration for the land, or into the hands of a purchaser for valuable consideration, who had notice of the character of the original transaction.

13. J. W. Z. and his wife by deed dated January 17, 1861, in consideration of $4,000.00 (as recited in the deed) granted to T. F. a parcel of land on Wheeling island addition to the city of Wheeling, describing the land granted. In the deed there is this clause, to wit: "And it is hereby agreed, that the said Theodore Fink shall pay off and discharge, as part of the consideration mentioned in this deed, the following deeds of trust executed by said Zane on said premises hereby conveyed, and which are now of record in the office of the clerk of Ohio county, to wit, a deed of trust to secure payment of $100.00 to John Dannah, and payable twelve months from the 15th day of March, 1859, and also $500.00 to said John Dannah payable

in nine months after the 5th day of December, 1860; also the sum of $250.00, payable four months after the 23d day of October, 1860, and endorsed by Gibson L. Cranmer and Hans W. Philips; also $500.00 on a certain deed-of-trust executed by Daniel Zane (now deceased) and said James W. Zane for the sum of $1,320.00 to secure John Dannah;· also the lumber bill of said party of the second part furnished by him to the said James W. Zane for the sum of $1,500.00 with interest thereon from the 16th day of September, 1854, until paid. The deed contains a covenant of general warranty and was executed by the said J. W. Z. and his wife and said T. F. Afterwards in April, 1873, the said J. W. Z. brought his suit in chancery in the circuit court of Ohio county against T. F. and others, and in his bill and as his cause of action he alleges, that said deed was in fact but a mortgage to save the said T. F. harmless in any sum he might advance on account of said J. W. Z.'s debts and that the said T. F. agreed, that he would sell the property or so much as might be necessary to pay off the indebtedness of said J. W. Z. so soon as the same could be sold to proper advantage and would fully account to said J. W. Z. for any surplus, whether of land or money, above the amount required for re-payment or indemnity. The bill prays an account, &c., and for re-conveyance, &c., and for general relief. (See bill). Upon the hearing of the cause the evidence under the pleadings fails to support the material allegations of the bill, but on the contrary establishes, that the true purpose of said deed as understood by all the parties to it at the time of its execution was three fold, to wit: 1st. To divest the said J. W. Z. of all right or interest in the said property. 2d. To secure the said T. F. as to the debts of said J. W. Z. in the said deed mentioned and perhaps any other debts of plaintiff which he might pay. And 3d. That the balance of the land after the last named purpose should be accomplished should be held in trust by the said T. F. for the use and benefit of the said J. W. Z 's wife and children, that they might have a home and some means of support. HELD:

That under such circumstances the plaintiff's bill was properly dismissed by the court below.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 23d day of March, 1878, in a cause in chancery in said court then pending, wherein James W. Zane was plaintiff, and John Fink and others were defendants, allowed upon the petition of said Zane.

Hon. T. Melvin, judge of the first judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

On the 4th day of April, 1873, the plaintiff commenced his

suit in equity against the defendants in the circuit court of the county of Ohio in this State; and afterwards at the rules in the clerk's office of the said court, on the first Monday of August, 1873, the plaintiff filed his bill in the cause. The bill is substantially as follows:

"The complaint of James W. Zane against Theodore Fink, John Fink and Caroline V. Zane, filed in the circuit court of Ohio county:

"The plaintiff complains and says, that on the 17th day of January, A. D. 1861, your orator, with his wife, Caroline, executed to one Theodore Fink a certain deed conveying to the said Fink a certain tract or parcel of land situated on Wheeling Island, containing twenty-two (22) acres of land, more or less, which is more particularly described in said deed, a copy of which is herewith filed and marked 'Exhibit A' of this bill. The consideration in said deed seems to have been four thousand ($4,000.00) dollars. Said deed was subject to the exceptions of certain property, parcel thereof, leaving in fact about —— acres. Your orator shows, that the said Theodore Fink is a brother-in-law, being the brother of the complainant's wife.

"Your orator further shows, at the date of said deed he was considerably in debt, as appears therefrom; that his object was to raise money to pay off and discharge said indebtedness; that in his trouble he applied to his brother-in-law to assist in so doing, either by advancing the money himself or assist him in procuring it from others, offering to execute a trust-deed to secure the payment of the sum thus advanced. After some delay the said Fink agreed to advance the money thus necessary and take a deed of trust to secure the payment. Thereupon the said Fink was instructed to procure a proper deed for execution by your orator and wife in accordance with said proposition. When the said deed was produced for your orator's execution, your orator discovered, in place of it being a trust-deed agreed upon, that it was in fact a deed in fee for the said real estate. He immediately called the attention of the said Fink to the fact and refused to execute it. The said Fink replied in substance, that adding up the claims, which your orator had to pay, he found them so large, that he thought it would be more prudent and better for both par-

ties, that the deed should be executed in fee; that he would take the land under the said deed and hold the same as a trust-deed or mortgage or a deed of indemnity to save him, the said Fink, harmless in any sum he might advance on account of your orator according to the terms of the original agreement, and that he would proceed to sell the property, or so much as might be necessary, to pay off said indebtedness, so soon as the same could be sold to proper advantage, and would faithfully account to your orator for any surplus, whether of land or money, above the amount required for repayment or indemnity; that your orator might safely trust him. After much hesitation he assented to said proposition and executed said deed, as shown in Exhibit 'A.'

"Your orator further says, that he is advised said Fink did to some extent execute and perform his covenant and agreement as herein set forth by paying some of said debts, the exact amount of which your orator is not able to state. Your orator charges, that at the time of said conveyance the said real estate was of great value, of much more value than the amount of the said debts—but even if then sold would have brought a much larger amount than the said consideration, although at that time Island property was not selling for near its value; that this consideration made it extremely important to your orator to prevent a sale and sacrifice of his property, and it was for this reason, that he made this effort hereinbefore stated to consolidate his indebtedness and gain time by making the loan aforesaid and waiting for better times.

"Your orator further states, that subsequently to the date of said deed, to wit: on the 15th day of April, A. D. 1865, the said Theodore Fink executed a conveyance to his father, John Fink, a copy of which is filed herewith marked exhibit "B," whereby, for the alleged consideration of two thousand ($2,000.00) dollars, he conveyed to him all the said property hereinbefore mentioned as conveyed by your orator to the said Theodore, but with special warranty only. The said John Fink is the father of the said Theodore and your orator's wife, the defendant. A copy of said deed is filed marked "B." Your orator charges, that the said John Fink took the said property upon the same trust and conditions as it was taken by the said Theodore; that he was privy to said original trust,

and in truth and fact he procured the said deed from his said son for the purpose of saving and protecting said trust, inasmuch as the said Theodore was largely engaged in risky business and liable at any time to become involved, in which event said property appearing to belong in fee to the said Theodore, would have been held in all probability subject to his debts, to the defeasance of the trust aforesaid and the sacrifice and destruction of the rights of your orator. Since the date of the deed, exhibit " A," your orator has ascertained, that a very small portion, if any, of the lumber bill alleged therein to be due to the said Theodore was in fact due ; that he kept no accurate account and trusted entirely to the said Theodore; and he is now satisfied, that the said amount was not due as therein stated, but the same was a mistake, and the same should be corrected.

" Your orator further charges, that no sale has been made under and according to said agreement, either by the said Theodore Fink, trustee, as aforesaid, under the said deed, exhibit " A," nor by the said John Fink, also trustee, in fact, since the date of the said deed, exhibit " B; " and if any such sale has been made, no account thereof has been rendered to your orator, nor has any deed been made to him by the said Theodore or the said John Fink for any surplus remaining after satisfaction of said indemnity or payment of the money advanced to your orator.

"Your orator further charges, that since the date of said deed the demand for said property has largely increased, and the same, or so much thereof as necessary, could be readily sold and still leave a large surplus in value to your orator. Yet the said Theodore Fink and said John Fink, each and both, refuse to execute said trust or to re-convey to your orator the said real estate, or any portion thereof, and continue, as they have continued since the date of said deed, exhibit 'A,' in the possession of said property by using and occupying as their own, and receiving the rents and profits thereof without accounting to your orator, or any one for his use, for the same.

"Your orator further shows, that on the 12th day of March, 1872, the said John Fink, in violation of his trust and to the manifest injury of your orator's just rights in the premises, executed to the said Caroline V. Zane, wife of your orator,

and daughter as aforesaid of said John, a deed conveying to her, in consideration of 'natural love and affection and $5.00,' about eight acres of said land mentioned in said deed, exhibits 'A' and 'B.' Your orator charges, that no valuable consideration passed between the parties, and your orator insists that as to him said deed which is filed herewith as exhibit 'C,' is invalid, in violation of said trust, and should be declared null and void by this court, with the exception of the property in exhibit 'C' mentioned no portion of the same has changed hands except as hereinbefore stated. Your orator is remediless save in a court of chancery, and in order that justice may be done him and the proposed fraud prevented, he prays, that an account be —— by the said Theodore and John Fink, respectively, of the amounts that they have paid on account of your orator under and by virtue of their obligation imposed upon the said Theodore by virtue of the terms of the deed, exhibit 'A.'

"2d. That they render respectively an account of the rents, issues and profits arising and accruing from said property since the date of said deed, exhibit 'A.'

"3d. That if upon a settlement of the two foregoing accounts it should appear there is any balance due to said Theodore Fink on account of any money advanced or paid by him on account of your orator under and by virtue of the deed, exhibit 'A,' then that some suitable person be appointed by this court to sell so much of said real estate as may be found necessary to liquidate such balance, if any, due said Theodore.

"4th. That this court will order and decree the said Theodore and John Fink, and each of them, to re-convey, after the payment of any such balance, of all the said property then remaining unsold and not necessary for the purpose of said indemnity.

"Your orator further prays all other and general relief which to the case may appertain, and which a court of equity is competent to administer. And he will ever yray, &c."

Exhibit "A" to bill is as follows:

"This deed made this 17th day of January, in the year 1861, between James W. Zane and Caroline, his wife, of the city of Wheeling, and State of Virginia, parties of the —— part

and Theodore Fink, of the county of Marshall and State aforesaid, party of the second part, witnesseth :

" That the said parties of the first part, for and in consideration of the sum of $4,000.00 to them in hand paid, the receipt whereof is hereby acknowledged, doth grant, bargain, sell and convey unto the said party of the second part the following described property situated on the Wheeling Island addition to the city of Wheeling, and bounded and described as follows, to wit: Beginning at the southeast corner of home tract, as marked on plat, and marked No. 1 south, distant from the east side of the western abutment of the suspension bridge and from the centre line of Virginia street 79 36-100 poles; thence down the east bank of the Ohio river and binding; thence S. 2° 35' E. 18 76-100 poles, S. 2° 35' W. 21 poles, S. 11° 55' W. 34 41-100 poles to the northeast corner of No. 3, as laid down on plat, and with a north line of No. 3 88° W. 42 53-100 —— to a stake; thence N. 9° W. 21 62-100 poles; thence S. 81° W. and parallel with Ohio and Virginia streets 13 98-100 poles to the east side of the Hempfield and Marietta and Cincinnati Railroad tract and at a northwest corner of tract No. 3; thence with an easterly line of said railroad track N. 74¼ — 41 36-100 poles to the southwest corner of tract No. 1, and with the southern line of said tract No. 1 and parallel with Ohio and Virginia streets N. 81 E. 70 63-100 poles to the beginning, containing twenty-two acres, more or less, and being the same property conveyed to the said James W. Zane by deed from Daniel Zane, dated the 9th day of ——, 1856, and now of record in Ohio county court clerk's office, in book No. 41, folio 464, excepting about 5 acres 3 roods and 38 poles heretofore conveyed by the said James W. Zane and wife to Elijah J. Stone by deed dated the 29th day of December, 1856, and now of record in Ohio county court clerk's office, in book No. 42, page 65, and excepting also the property being a part of said twenty-two acres above mentioned and conveyed by the said James W. Zane and wife to Hans W. Phillips and Gibson L. Cranmer by deed dated the 4th day of February, 1860, and now of record in said clerk's office, in book No. 44, page 418, and excepting also another piece of said premises conveyed by said Zane and wife to said Stone by another deed dated the

7th day of March, 1860, and now of record in said clerk's office, in book 44, page 453, and containing 1 acre 2 roods and 100 poles; also the following personal property now in the hands of said James W. Zane, situated on said premises, to wit: one —, all the household and kitchen furniture of any kind whatsoever now in the home of said James W. Zane, also one horse, one cow and all the farming utensils and implements now on said premises belonging to the said Zane; and it is hereby agreed, that the said Theodore Fink shall pay off and discharge, as is part of the consideration mentioned in this deed, the following deeds of trust executed by said Zane on said premises hereby conveyed, and which have now of record in Ohio county court clerk's office, to wit: a deed of trust to secure the payment of one hundred dollars to Jno. Danah and payable in twelve months from the 15th day of March, 1859, and also five hundred dollars to said John Danah, payable in nine months after the 5th day of December, 1860; also the sum of two hundred and fifty dollars, payable four months after the 23d day of October, 1860, and endorsed by Gibson L. Cranmer and Hans W. Phillips; also five hundred dollars on a certain deed of trust executed by Daniel Zane (now deceased) and said James W. Zane for the sum of thirteen hundred and twenty dollars, to secure John Danah; also the lumber bill of said party of the second part furnished by him to the said James W. Zane for the sum of fifteen hundred dollars, with interest thereon from the 16th day of September, 1854, until paid. And the said parties of the first part hereby covenant they will warrant generally the property hereby conveyed.

"Witness the following signatures and seals:

"JAMES W. ZANE,        [Seal.]
"CAROLINE V. ZANE, [Seal.]
"THEODORE FINK,        [Seal.]"

Exhibit "B" filed with bill is a deed of conveyance purporting to be from Theodore Fink and Caroline Fink, his wife, of the city of Wheeling, Ohio county, State of West Virginia, of the first part, and John Fink, of South Wheeling, of the same county and State, of the second part. By this deed the said parties of the first part for and in consideration of the sum of $2,001.52 to them by the said party of

the second part paid, grant with special warranty to the said party of the second part the same property by metes and bounds as is described and granted in the above deed from James W. Zane and wife to Theodore Fink. The last clause of said Exhibit B is as follows: "It is hereby understood and agreed between said parties, that said parties of the first part grant unto the said party of the second part only such estate and interest in the land aforesaid as they now hold, and the party of the second part hereby accepts said grant of said premises, subject to any and all claims, to which said land may be subject on account of debts mentioned in said deed from said James W. Zane and wife to said Theodore Fink above referred to." This deed also appears to be signed and sealed by the parties of the first and second part thereto.

Exhibit " C " to bill is as follows:

" Know all men by these presents, that we, John Fink and Elizabeth Fink, wife of said John Fink, of Bellaire, Belmont county, of Ohio, the grantors, for the consideration of natural love and affection and for the sum of $5.00 received to our full satisfaction of Caroline V. Zane, wife of James W. Zane, the grantee, do give, grant, bargain, sell and convey unto the said grantee, her heirs and assigns, the following described premises situated in the city of Wheeling, county of Ohio and State of West Virginia, and known as a part and so much of the land described in a deed of conveyance executed by Theodore Fink and Angelina Fink, his wife, to the present grantor, John Fink, dated April 18th, A. D. 1865, and recorded in the record of deeds of Ohio county, in the State of West Virginia, in Book 48, folio 588, as lies on the east side of Pennsylvania street, on Wheeling Island, and bounded on the south by the lands of Elijah J. Stone and on the north by the lands of Angelina Fink, and containing about eight acres, more or less, but subject to all legal highways, to have and to hold the above granted and bargained premises, with the appurtenances thereto belonging, unto the said grantee, her heirs and assigns forever; and we, the said grantors, for ourselves and our heirs, executors and administrators, covenant with the said grantee, her heirs and assigns, that at and until the ensealing of these presents, we were well seized of the above described premises as a good and indefeasible estate in

fee simple, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever, and will warrant and defend said premises, with the appurtenances thereto belonging, to the said grantee, her heirs and assigns forever, against all lawful claims and demands whatsoever. And I, the said Elizabeth Fink, wife of the said John Fink, do hereby remise, release and forever quit-claim unto the said grantee, her heirs and assigns, all my right and title of dower in the above described premises.

"In witness whereof, we have hereunto set our hands and seals the 12th day of March, in the year of our Lord 1872.

"JOHN FINK,

"ELIZABETH E. FINK."

It appears by the record, that at rules held in the clerk's office of said circuit court on the first Monday in September, 1873, the defendants, John Fink, Theodore Fink and Caroline V. Zane, filed their several answers to the plaintiff's bill which said answers are in substance as follows respectively :

"The several answer of John Fink to the plaintiff's bill :

"This defendant, for answer to the said bill, says that at the time of the making of the deed by the plaintiff to Theodore Fink, it being well understood by the parties, that the plaintiff did desire to borrow more money to save his property from sale and sacrifice, and made application to Theodore Fink for such purpose, but that he, knowing that it would be of no use to lend him money on the same, as it was then liable to more than its value, refused to lend any money or to take any deed-of-trust on the said property, but would only purchase the same absolutely and expressly, free from all trust or conditions except to pay the debts then on the land, which were of greater amount than the value of the land at that time, and this defendant was then anxious that the plaintiff should be put into a condition in which he might, if he reformed his habits, be able to do something for his wife and children ; that on the 18th of April, 1865, he purchased the said land from his son, Theodore Fink, and took his place in relation to the payment of some of the debts so made by the said plaintiff not yet discharged, and that the same is, as con-

veyed to him by Theodore Fink and wife, *bona fidc,* and with-
out any ———— or other trust, intending to hold over for his
daughter, and he let her remain in possession thereof with her
family, including her husband, the plaintiff; that it was his
intention always to keep this property for his daughter and
her family, and to keep it out of the hands of the plaintiff,
simply because he was afraid if the plaintiff should get the
control of the same he would use it up in a short time and
leave his wife and children without any support, and he has
that fear at this time, and would be afraid to put anything in
his hands, but is willing and desirous to assist his family, as he
has done ever since and before this property was conveyed to
him ; that as soon as he got the conveyance ————, he con-
tinually supported the family, including the plaintiff, his
daughter, wife of said plaintiff, and paid even the sum of
$1,000.00 ; that he paid for taxes over $775.00, and for re-
pairs over $450.00 ; that this support was furnished at the
solicitation and request of the plaintiff and his wife; that this
day purchased for the benefit of his said daughter and her
family, including the plaintiff as a member thereof, who seemed
satisfied with his purchase of this land, and never made any
claim to him for the same except by this suit; that he would
not have touched this land only on the expectation of bene-
fitting his daughter and her family, and would not have at-
tempted to have relieved the plaintiff, believing it would be
useless so to do. He charges the ——— to be that Theodore agreed
to pay for the said property more than it was worth at that
time, and both his and this defendant's object in the purchase
was to be able thereby to assist to maintain the wife of the
plaintiff and her family, as they neither expected to re-
ceive any benefit from the purchase; that he conveyed about
eight acres, the best of the land, including the said dwelling-
house, to his daughter, as he had always intended to do, for
his love and affection for his said daughter and her children,
and he well knew that the plaintiff would get what support he
could have from the said land and his constant advancement
towards the support of his daughter and her family ; that he
would have done nothing for the said plaintiff, but as a part
of his daughter's family, he received the benefit of this de-
fendant's ————.

" This defendant further says, that had not this land now become very valuable the plaintiff would have been content to reap the whole benefit of it, and this defendant's constant support of his family, —— any of his speculating friends have tried to —— this land on any terms they could urge, only for the increased value of this land. This defendant prays, that the said plaintiff may be held to his deed, and that this defendant's daughter may out of the ——— of the said land, the labor of herself and her children, and the assistance as heretofore ——— of her father, she may be able to support her family and her said household as heretofore. And this defendant prays to be dismissed hence."   .

### ANSWER OF THEODORE FINK.

" The several answer of Theodore Fink to the bill of plaintiff :

" This defendant, for answer to so much of the bill as he is advised is necessary for him to answer, says, that several years before the said 17th day of January, 1861, Daniel Zane, father of the plaintiff, conveyed a tract of land on Wheeling Island to him, containing about twenty-two acres of land, but before the making of the deed to this defendant the plaintiff had conveyed to divers persons small parcels of the same, reducing the remaining tract to about fourteen acres, and at that time not worth the amount of the liens thereon, mostly made by deed-of-trust, partly appearing by the said deed. It is true, that the plaintiff did make a strong effort to induce this defendant to lend him money and to take a deed-of-trust on this property as his security, and indeed insisted this defendant should do this, but this defendant well knew the dissipated habits of the plaintiff and his shiftless management, and had no confidence, that he would or could meet any engagement to pay such a debt, utterly refused to make any such arrangement, and would only agree to pay the debts of the plaintiff, and the plaintiff well knew, that this defendant would make no such arrangement, but only to purchase the land absolutely and entirely at that time for more, in his opinion, —— the same was worth, and to save the same from being sacrificed by the plaintiff's creditors. The plaintiff well knew at the time of the said conveyance, that this defendant would not undertake to pay the said debts except the said land

should be conveyed to him absolutely, and the plaintiff had no contract or understanding, that this defendant would hold or was to hold the land on any trust whatever, and he denies, that the said deed was made to him by the said plaintiff upon any ——, or other trust whatever, and he denies, that he did make any such engagement or —— with the plaintiff to hold the said land as security for any money he should pay for him, the said plaintiff.

" This defendant avers that from the time of the purchase, he treated the said land as his own, and moved into a part of the house, and so remained in the same so long as he owned the same, and that he permitted the plaintiff and his family to occupy the other part of the dwelling-house until the time he sold the same to his father, who let them reside there ever since. This defendant avers that he would have had nothing to do with the property except he owned the fee, with full control of the same, and but for the purpose of saving a house for his sister and her very large family of children, and he did intend to let his sister and her family remain in the said dwelling-house, which he deems he had a full right to do ; and he here again denies that the plaintiff had any right to have this property —— upon any terms whatever, and the plaintiff so understood the fact and so treated the property.

" That on the 18th April, 1865, not being willing to carry this unprofitable purchase any longer, and his father, John Fink, being willing to take the whole matter *off* his hands, he sold and conveyed the said property so conveyed to him to his father, the said John Fink, *bona fide,* without any trust or conditions except to fulfill and carry out the engagement he had made with the said Zane, which he immediately did by *paying* on the said $1,320.00 note the sum of $913.00, the estate of Daniel Zane paying the remainder of the said note, and by paying the estate of Daniel Zane over $200.00—the chattel deed of trust for the use of Daniel Zane ; that while the said defendant took the said possession, he made improvements to the amount of at least the sum of $250.00, and made repairs to the amount of $200.00 more, and he had *but* the plaintiff $130.00 in cash, and paid a judgment to —— of $43.94 and a note to J. H. Waters for $23.40, and many other debts, and especially to John Darrah deed of trust of $537.50

and $120.00 and to H. W. Phillips $250.00, and estimated the lumber bill in the deed mentioned, with interest, at $2,070.00; that he paid a judgment to Smith & Gornell $9.51, tax bill of 1860, balance, $14.00, and grocery bill about $100.00, and taxes $145.63 ; that he retained his sister and her family, including the plaintiff, in the house on said premises, and they enjoyed the whole profits of the same the whole time he owned the same, and assisted his said sister in supporting her said family, of which he kept no account, not expecting in the least to be remunerated therefor.

" This defendant, further answering, denies that the said plaintiff ever claimed the said land of him, or in any way offered to redeem the same, nor did he ever expect to do any such thing, for the produce of this small tract of land was not enough to support his family, and he did nothing himself towards supporting them, but, on the contrary, was all the time a great burthen to his wife and children ; that the family of the plaintiff, himself included, had all the benefit of the said tract of land ever since it was conveyed to this defendant, and he had no benefit whatever from the same ; that the conveyance of the land to the plaintiff's wife was and is as useful to him as to the other members of the family, and this defendant is of the opinion that had it not been for some speculating relatives the said plaintiff would not have brought this suit. This defendant is convinced that if this plaintiff should recover this land his part of it would ——, and his family be turned out without anything whatever, and he prays that the Court would hold him to his deed, as in truth and justice he ought to be held."

### ANSWER OF CAROLINE V. ZANE.

" The several answer of Caroline V. Zane to the bill of the plaintiff :

" This defendant for answer to the said bill says, that she is the wife of the plaintiff, and has had by him eleven children, eight of whom are still living, several of whom are of tender years; that in 1856 Daniel Zane, the father of the plaintiff her husband, conveyed to him a tract of land on the Island containing about twenty-two acres of land, and with a small —— erected on the same—a good double dwelling-

house, but that so poorly did her husband manage his business, that in less than five years he had sold off in parcels about eight acres of this land, and was involved in debt to the whole value of the remaining land, and much more than it would sell for at any forced sale; and that in January, 1861, —— her and her children — in the face, and her husband was very much dissipated and would not work for his family at all the — fact that unless he could in some way ward off his creditors, that the — would take from them all the property and leave him still in debt; that under such circumstances her said husband —— to her brother for a loan, and offered to secure him by a deed of trust on this land, but her said brother, Theodore Fink, well knowing that her said husband was in debt for more than the land was worth, and well knowing that he could not pay him for any advance he might make on that —— but for the purpose of retaining a shelter for this defendant and her helpless family, her said brother proposed to purchase the land, and as the consideration to pay her husband's debts — charged on the land by deeds of trust; and her said husband having found out the extent of his indebtedness and to prevent his said creditors from appropriating the said land and furniture and chattel property to the payment of the debts, conveyed the same to the said Theodore Fink, and the said Fink well knowing the object of the said conveyance to be the same, subject nevertheless to the said debts so due and ——. This defendant says there was no trust in the same, except for the said creditors, nor was there any agreement, that her said husband should have the right to redeem the land, for he was afraid that if he had it his creditors would take it for their said debts and thus defeat the whole object of this conveyance, and so the conveyance was made covering everything in the house and on the premises, mostly mentioned in the deed, even to the potatoes stored in the cellar for their consumption, and then the said husband rested satisfied, that he put his property out of the reach of his creditors. She avers, that at that time, the 17th day of January, 1861, the debts were more than the value of the land conveyed, and that her said brother would not have had anything to do with this land only to save it from being sacrificed and as a home for her and her family, and that she and her

family lived on the place ever since that time, and that her brother had no advantage from it but to live in a part of the house, which he made additions to and repaired to a considerable sum of money, and paid the taxes thereon ; that her husband not until lately made any claim to the property—now that it has become valuable, and he being as she believes and charges, put up to do this by some of his relations ; that her father made a *bona fide* purchase of this land from her brother, with the knowledge and consent of her said husband. And she avers, that her father did this to favor her and the children, but would have done nothing for her husband, because he believed it to be useless, and that her said father let her live in one half of the house, and have all of land for her support and the support of her children to this day, and neither he nor her brother ever had any benefit of the said land ; that as stated in the bill, for love and affection for her, he conveyed about eight acres of the said tract of land, including the said mansion-house, to her in fee, as he had right to do, and not only has he done this, but has mainly supported her ever since he purchased the land, and still continues to support her and her family, including her said husband.

" She further states that her said husband has lived with her as part of her family, and has done nothing towards her or his own support, and is in no wise entitled to this land conveyed to her, either in law or equity, and it would be most base ingratitude now under all of the circumstances for him to take this land from her and turn her and her eight children out into the world with nothing. She prays as against her that bill be dismissed."

On the 19th day of April, 1875, it was suggested to the Court, that since the last term thereof the said Theodore Fink had died, and that his widow Angeline P. Fink had been appointed his administratrix, and by consent of said Angeline P. Fink, administratrix, and by her attorney she was made a party defendant in the cause. It appears that on the 7th day of February, 1876, the following order was entered in the cause, viz :

" On motion of John Fink and Caroline V. Zane, they have leave to file their supplemental answer to the bill in this

case, which is here accordingly done, and on motion of said defendant, it is thereupon ordered that the complainant do show cause on the first day of the next term why an order should not be entered that the said G. G. Sawtell file a supplemental bill in the nature of a revivor, or that this suit be dismissed. And it is ordered, that a copy of this order be served upon the said G. G. Sawtell and upon the complainant."

The supplemental answer of John Fink and Caroline V. Zane mentioned in the above order is as follows:

"The joint supplemental answer of John Fink and Caroline V. Zane to the bill filed in this case : ·

"The said defendants answer to matters which have transpired since the filing of their answer to the bill originally filed, say that on the 14th day of April, 1874, the plaintiff, his wife, Caroline V., joining, conveyed to Theodore Fink in trust, a certain portion of the said land so conveyed by the said Daniel Zane to the plaintiff, described as not to exceed twenty-one lots, lying east of South Zane street, —— an addition to the city of Wheeling, by J. W. Zane, as J. W. Zane's addition to the city of Wheeling; that the said Theodore Fink, —— Platoft B. Zane has been appointed as trustee in his place, and has sold of the said property thirteen of said lots; that the said deed having been executed by the plaintiff, except so much of the property sought to be recovered by the said suit from the operation of the same in every respect, a duly certified copy of which deed is here exhibited and marked 'V'; that afterwards, on the 23d day of April, 1874, the said J. W. Zane conveyed to Gilbert G. Sawtell, of this county, the whole of the said tract of land, by a deed of warranty, so sought to be affected or redeemed in this suit; which deed has been duly recorded, a true transcript of which is here exhibited and marked 'Z' and made a part of this answer. And these defendants here show to this court, that the plaintiff, J. W. Zane, has now no further interest in this suit. All of which these defendants are ready to prove by the said record. And they pray to be dismissed hence with their costs."

EXHIBIT "V" TO ABOVE ANSWER.

"This deed, made this 14th day of. April, 1874, between

James W. Zane and Caroline V. Zane, his wife, of the first part, and Theodore Fink, of the second part, all of the city of Wheeling, witnesseth :

"That the parties of the first part do grant unto the party of the second part the following described real estate situate in Ohio county, State of West Virginia, described as follows, with general warranty, that is to say, the front part of the tract of land on which the parties of the first part reside, on Wheeling island, not to exceed twenty-one lots of J. W. Zane's addition to the city of Wheeling, commencing at lot number one, on Fink street, fronting on the Ohio river, in trust, nevertheless, that the said party of the second part shall sell a— dispose of the said lots in parcels or lots as occasion may fairly offer, and when he shall sell any one of the said lots, he shall pay to the said J. W. Zane out of the first money the sum of $100.00, and the remainder of the purchase-money, less the reasonable commissions of the said trustee, shall be paid to the said Caroline V. Zane as her seperate property.

" This shall in no wise influence any action in respect to the remainder of the property.  The remainder, after taking out the $100.00 for each lot for the said J. W. Zane, shall bear the assessment and taxation so that the said J. W. Zane shall have his $100.00 for each lot free from any drawback whatever.  Said trustee may sell at private or public sale as he shall determine to be best for the parties.

" Witness the following signatures and seals :

" James W. Zane,          [Seal.]
". Caroline V. Zane,          [Seal.]
" Theodore Fink.          [Seal.]

" West Virginia, *Ohio county, sct.:*

" I, Robert B. Woods, clerk of the county court of said county, do certify that James W. Zane and Theodore Fink, whose name is signed to the annexed writing bearing date on the 14th day of April, 1874, have this 14th day of April, 1874, acknowledged the same before -- in my office, in the county aforesaid.  And I further certify that Caroline V. Zane, wife of James W. Zane, whose names are signed to said writing, personally appeared before me in my said office, and being examined by me privily and apart from her husband, and having the said writing fully explained to her, she, the

said Caroline V. Zane, acknowledged the said writing to be her act, and declared that she had willingly executed the same and does not wish to retract it.    Said writing was thereupon admitted to record.

" Teste:                    ROBERT B. WOODS, *Clerk.*
" A true copy.   Teste :     ROBERT B. WOODS, *Clerk.*"

### EXHIBIT " Z " TO ABOVE ANSWER.

" This deed made this 23d day of April, 1874, between James W. Zane, of the first part, and Gilbert G. Sawtell, of the second part, all of the city of Wheeling, county of Ohio, and State of West Virginia, witnesseth :

" That the said James W. Zane, for and in consideration of the sum of $2,500.00 to him in hand paid, and one hundred and twenty acres of land situate in the county of Brown, in the State of Indiana, and of the promissory note of the party of the second part for $1,000.00, of even date herewith payable one year after the date thereof, and bearing interest at the rate of eight per cent., the receipt of all which consideration is hereby acknowledged, doth grant unto the said Gilbert G. Sawtell, with covenant of special warranty, all the right, title and interest of the said James W. Zane in and to the following described property to wit: all that property situated on the Wheeling Island addition to the city of Wheeling heretofore conveyed by the said Zane and Caroline, his wife, to Theodore Fink by deed dated January 17, 1861, and now of record in the office of the clerk of the county court of Ohio county, in deed-book No. 45, on page 215, excepting the property set forth in said deed as having been conveyed to E. J. Stone, by said Zane and wife, excepting also the property set forth in said deed as having been conveyed to H. W. Phillips and G. L. Cranmer by said Zane and wife, and accepting also the personal property mentioned in said deed, said property being part of the same property conveyed to the said James W. Zane by Daniel Zane by deed dated the 9th day of ———, 1856, and now of record in the office of the clerk of the county court of Ohio county, in deed-book 4, folio 464.

" Witness the following signature and seal this 23d day of April, 1874 :

"JAMES W. ZANE, [Seal.]

"STATE OF WEST VIRGINIA, *Ohio county, to wit :*

"I, John O. Pendleton, a notary public within and for said county, do certify, that James W. Zane, whose name is signed to the writing hereto annexed bearing date on the 23d day of April, 1874, has this — acknowledged the same before me in my said county.

"Given under my hand this 23d day of April, 1874.

"JOHN O. PENDLETON,

"*Notary Public.*

"WEST VIRGINIA, *Ohio county, sct.:*

"I, Robert B. Woods, clerk of the county court of said county, do certify that the foregoing writing dated April 23d, 1874, was presented for and by me admitted to record in my office this 23d day of April, 1874, at 2 o'clock and 25 minutes P. M.

"Teste:                    ROB'T B. WOODS, *Clerk.*

"A true copy.    Teste :        ROB'T B. WOODS, *Clerk.*"

ANSWER OF G. G. SAWTELL TO RULE.

"For answer to the said rule, said G. G. Sawtell says, that this suit ought not to be dismissed, and that he ought not to be compelled to file a bill in the nature of a bill of supplement and revivor, but that this suit ought to proceed in the name of J. W. Zane as complainant, because he says that each of the said transfers and conveyances mentioned in the supplemental answer of the defendants, John Fink and Caroline V. Zane, and dated respectively, April 14, 1874, and April 23, 1874, came to the knowledge of said defendants at the times of the respective dates of said conveyances, and that after those times they suffered this cause to proceed in the name of said James W. Zane, and themselves did acts and took proceedings therein until the filing of said supplemental answer on February 7, 1876, without any objection to it so proceeding, and that in the meantime the depositions of R. H. Miller and J. W. Zane and other witnessess were taken on behalf of the complainant upon notice to said defendants, who attended and cross-examined. The depositions of the defendant, John Fink, and of E. J. Stone and others were taken by and on behalf of said defendants upon notice served on J. W. Zane and information given the counsel of said Saw-

tell.   And the death of Theodore Fink was, at the instance
of said defendants, suggested, and at the like instance this
cause was revived against the administratrix of his estate."

### ANSWER OF J. W. ZANE TO RULE AFORESAID.

"For answer to the said rule, said J. W. Zane says, that this
suit ought not to be dismissed, and that said G. G. Sawtell
ought not to be compelled to file a bill in the nature of a bill
of supplement and revivor, but that this suit ought to pro-
ceed in the name of this respondent, the original complainant,
because he says that each of the said transfers and convey-
ances mentioned in the supplemental answer of the defend-
ants, John Fink and Caroline V. Zane, and dated respectively
April 14, 1874, and April 23, 1874, came to the knowledge
of said defendants at the times of the respective dates of
said conveyances, and that after those times they suffered
this cause to proceed in the name of said J. W. Zane, and
themselves did acts and took proceedings therein until the
filing of said supplemental answer on February 7, 1876, with-
out any objection to said cause so proceeding, and that in the
meantime the depositions of R. H. Miller and J. W. Zane and
other witnesses were taken on behalf of the complainant,
upon notice to said defendants, who attended and cross-
examined.   The depositions of the defendant, John Fink, and
of E. J. Stone and others were taken by and on behalf of
said defendants upon notice served on J. W. Zane and infor-
mation verbally given the counsel of said Sawtell ; and the
death of Theodore Fink was, at the instance of the said de-
fendant, suggested, and at the like instance this cause was re-
vived against the administrator of his estate."

Afterwards and on the 18th day of July, 1876, the circuit
court made and entered this order, viz:

" This case came on this 18th July, 1876, to be further
heard upon cause shown by G. G. Sawtell why he should not
be compelled to file a bill in the nature of a bill of revivor
filed in writing by him.   The court, upon the consideration
thereof, find, that the said causes so assigned are sufficient,
and the rule is discharged.   To which ruling of the court
the defendants except."

It further appears, that on the 5th day of May, 1877, the
circuit court made the following decree in the cause, viz:

"This cause came on this 5th day of May, 1877, to be heard on the bill and exhibits, the answers of John Fink, Caroline V. Zane and Theodore Fink, and their exhibits, the complainant's replications thereto, and the depositions taken and filed in this cause, and was argued by counsel. Whereupon it is adjudged, ordered and decreed by the court, that a jury be empanelled at the bar of this court to try the following issue: Whether the deed dated January 17th, 1861, made by the said James W. Zane and Caroline V., his wife, to Theodore Fink was intended by the parties thereto to be a security for money paid or to be paid by said Theodore Fink to said J. W. Zane or to others for his use. Upon the trial of which issue said J. W. Zane shall be plaintiff and shall be entitled to open and close the case, and said John Fink and Caroline V. Zane shall be defendants. Upon the trial of said issue any depositions heretofore taken in this cause may be read by either party if it be shown, that the witness be dead or unable from sickness to attend or be beyond the jurisdiction of the court."

To this order the complainant objected and excepted.

It further appears, that afterwards, on the 23d day of March, 1878, the circuit court made and entered the following decree in the cause, viz:

"This cause came on to be heard on the motion heretofore made by the plaintiff to set aside the order made on the 5th day of May, 1877, referring a certain issue to a jury. Upon consideration thereof the court here sets the said order aside. And the case coming on to be further heard upon the motion of Caroline V. Zane to suppress the deposition of the plaintiff, J. W. Zane, filed by the plaintiff in this case, for the causes and on the grounds stated in the said motion, upon consideration thereof the court doth order, that as against the said Caroline V. Zane the said deposition be and the same is here suppressed. And on the motion of the said Angeline P. Fink, administratrix of the estate of the said Theodore Fink, deceased, the said deposition of the said J. W. Zane, so far as it relates to personal transactions or communications with the said Theodore Fink, deceased, as set forth in the motion in writing filed with the papers in this case, as against the said Angeline P. Fink, is here by the court suppressed.

And this cause coming on to be finally heard this 23d day of March, 1878, upon the bill of the plaintiff and the exhibits thereof, the several answers of Theodore Fink, John Fink and Caroline V. Zane and the exhibits thereof, and the replications of the plaintiff, the depositions of the witnesses, except such parts of the deposition of J. W. Zane as have been suppressed, and the exhibits to the said depositions, the court find, that the equity is with the defendants, and upon such hearing and argument of counsel for the parties it is here by the court ordered, adjudged and decreed, that the said bill be and the same is here dismissed.  And it is further ordered and decreed, that the plaintiff pay the costs of this suit, which are so adjudged against him."

The said motion of defendants Caroline V. Zane and John Fink to suppress deposition, as appears by the record, is as follows, viz:

" J. W. ZANE v. JOHN FINK, CAROLINE V. ZANE and AN-
    GELINE FINK, adm'x of THEODORE FINK, deceased.—In
    chancery.

" And now comes Caroline V. Zane and John Fink and move the court here to suppress the deposition of J. W. Zane, filed in this cause the 26th of December, 1874, because the same was by him given after the said J. W. Zane had conveyed away to G. G. Sawtell the whole of the property in controversy, and then had no interest in the same, nor has now any interest in it, and because he is the husband of the said Caroline V. Zane, and that she was then and still is his wife, and that his testimony if received would be against her, and she objects to the same."

The said motion of the defendant, Angeline Fink, administratrix, &c., to suppress the deposition as appears by record, is as follows, viz:

"JAMES W. ZANE v. JOHN FINK, MRS. ZANE AND ANGE-
    LINE FINK, administratrix of the estate of THEODORE FINK,
    deceased.—In chancery.

" The defendant, Angelina Fink, as administratrix of the estate of Theodore Fink, deceased, now here, by her counsel, moves the court to suppress such portion of the deposition of J. W. Zane taken on the 21st of December, 1874, and filed on

the 26th of December, 1874, as relates to the personal trans-
actions and communications as passed between the said Theo-
dore Fink in his lifetime and the said J. W. Zane in relation
to the matters in dispute in this suit—that is to say:

"1st. The answer of the said J. W. Zane to the second in-
terrogatory. 2d. Also to the answer to the third interrogatory.
3d. Also the sixth interrogatory. 4th. Also to the seventh
interrogatory. 5th. Also to the •eighth interrogatory. 6th.
Also to the ninth interrogatory. 7th. Also· to the tenth in-
terrogatory. 8th. Also to the eleventh interrogatory."

There is a considerable amount of evidence taken and filed
in the cause by plaintiff and defendants including depositions
and papers therein referred to and mentioned as exhibits.

. I deem it unnecessary to state or set out said evidence and
papers, as it would extend this statement of the case to too
great a length; but so much of the evidence as ·is deemed
proper or necessary to specifically refer to, is stated in the
opinion of the Court; and the effect of the evidence gener-
ally is also referred to in the opinion so far as deemed nec-
essary.

From and to said decree of the 23d of March, 1878, the
plaintiff on his petition and assignment of error therein here-
tofore obtained from this Court an appeal and *supersedeas.*

*W. P. Hubbard* for appellant cited the following authori-
ties: Code, ch. 130, § 23, clause V; 82 Mass. 488; 2 Munf.
148; 16 Ohio St. 220; 29 Ia. 284; 12 W. Va. 284; 1 How.
118; 19 How. 289; 12 Wall. 323; 12 W. Va. 70; 15 Wall.
105; 4 W. Va. 4; 109 Mass. 130; 11 Gratt. 552; 29 Gratt.
27; 12 How. 139; 2 Call 429; 2 Munf. 40; 4 Munf. 140; 24
Gratt. 374; 6 Otto 332; 1 Wash. 14; 4 Johns. Chy. 167; 7
Johns. Chy. 40; 2 Lead. Cas. in Eq. (1877) 1983, notes; 11
W. Va. 511; 20 N. Y. 40; 16 Barb. 445; 2 Am. Lead. Cas.
1987.

*Daniel Peck* for appellees cited the following authorities: 15
W. Va. 208; 62 Barb. 531; 51 N. Y. 624; 36 N. Y. 380;
26 Barb. 612; 39 N. Y. 318; 5 Hun 536; 3 Hun 513; Story
Eq. Pl. § 349; Mitf. Eq. Pl. 65 *et seq.*; 20 N. Y. 40; 16
Barb. 445; 3 Lans. 68; 16 Ohio St. 220; 29 Ia. 484; 10 W.
Va. 18.

HAYMOND, JUDGE, announced the opinion of the Court:

The counsel for the appellees in this case claims in his argument and printed brief, that "the very act of Sawtell purchasing out the sole plaintiff abated the suit," and claims also, that plaintiff has no further interest in the subject-matter of the suit and cannot therefore ask this Court to have the final decree of dismissal reviewed. The counsel for appellees also says in his brief : " I conceive the court committed an error in compelling the defendants to litigate the matter with J. W. Zane, after he parted with all of his interest in the subject-matter in this suit. To say the least of it, it was not right to turn us over to an irresponsible party for costs, and suffer his grantee to go scot-free."

I do not understand however the appellees' counsel to insist, that because of such error in the circuit court, if error it be, the final decree in the cause, which is in favor of his clients and dismisses the plaintiff's bill, should be reversed. On the contrary I understand the appellees' counsel to insist and maintain, that the said final decree should be affirmed, unless the court should dismiss the appeal and *supersedeas* allowed in this cause, because the appellant has no right to ask this court to have the said final decree reviewed by it for the reasons assigned by him in his brief. If for the reasons assigned by the counsel for the appellees this court ought not to review the cause upon petition in the name of appellant, then it is the unquestionable duty of this Court to dismiss the appeal and *supersedeas* as being improvidently allowed without passing upon the merits of the case. It is therefore proper first to inquire into and determine the said preliminary question raised and made by the appellant's counsel.

This I will now proceed to do. But I must be permitted to say in the outset, that authorities upon the subject are cloudy and conflicting, and in order to arrive at a satisfactory solution of the question it is necessary to consider and discuss principles governing the practice in courts of equity, which though interesting are complex in their character, and which have not been very much considered by the Appellate Courts of this State or the State of Virginia, or in fact by very many of the Appellate Courts of the other States of the Union, so far as I am advised.

In determining the question under consideration I will first consider the effect, and what course a court of equity should pursue in a case before it, where the sole plaintiff *pendente lite* conveys his whole interest in the subject-matter of the suit to a third person, and the fact of such conveyance *pendente lite* is properly brought before the court by the defendant with objections on his part to the cause being further prosecuted by the plaintiff, unless the *pendente lite* purchaser is made a party to the cause by proper bill; and also where the defendant asks, that unless the *pendente lite* purchaser be made a party to the suit within a reasonable time, the same be abated or dismissed.

To reach a correct and satisfactory conclusion upon the subject it is proper in my judgment to seek for light in the authorities at hand and to consult them, so far as they bear upon the question.

Judge Story in section 406 of the first volume of his Equity Jurisprudence says: " Ordinarily it is true, that the decree of a court binds only the parties and their privies in representation or estate. But he, who purchases during the pendency of a suit, is held bound by the decree, that may be made against the person, from whom he derives title. The litigating parties are exempted from taking any notice of the title so acquired; and such purchaser need not be made a party to the suit. Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy; for otherwise alienations made during a suit might defeat its whole purpose, and there would be no end to litigation. And hence arises the maxim, *pendente lite nihil innovetur*, the effect of which is, not to annul the conveyance, but only to render it subservient to the rights of the parties in the litigation. As to the rights of the parties, the conveyance is treated as if it never had any existence; and it does not vary them. A *lis pendens*, however, being only a general notice of an equity to all the world, it does not affect any particular person with a fraud, unless such person had also special notice of the title in dispute in the suit," &c.

In the fourteenth section of chapter 139 of the Code of 1868 of this State it is provided touching notice of *lis pendens,*

that " the pendency of an action, suit or proceeding to subject real estate to the payment of any debt or liability, upon which a previous lien shall not have been acquired in some one or more of the methods prescribed by law, shall not bind or affect a purchaser of such real estate, unless and until a memorandum, setting forth the title of the cause ; the court in which it is pending ; the general object of the suit ; the location and quantity of the land, as near as may be, and the name of the person whose estate therein is intended to be affected by the action or suit, shall be filed with the recorder of the county in which the land is situated ; and such recorder shall forthwith record the said memorandum in the deed-book, and index the same by the name of the person aforesaid." This section has been amended by the legislature in some respects by chapter 68 section 14 of the Acts of 1877.  See page 93 of said Acts.  I deem it unnecessary here to specify the nature or extent of these amendments.  I refer to this statute here, because I think it modifies greatly the general doctrine of *lis pendens*, as stated by Judge Story in some cases.  But I will not pause here to specify the cases, as I deem it unnecessary in this case.  I give the statute here with reference to the amendment however, that it may be read in connection with the general doctrine of *lis pendens*, as it may be stated in this opinion, to the end that no one may be misled by the general doctrine in the absence of statutory provisions.  See also 1 Story Eq. Jur. § 405 and also 2 Story Eq. Jur. § 908.  In the last named paragraph Judge Story says :

"Although the maxim is *pendente lite nihil innovetur*, that maxim is not to be understood, as warranting the conclusion, that the conveyance so made is absolutely null and void at all times, and for all purposes.  The true interpretation of the maxim is, that the conveyance does not vary the rights of the parties in that suit ; and they are not bound to take notice of the title acquired under it ; but with regard to them the title is to be taken, as if it had never existed.  Otherwise suits would be indeterminable, if one party, pending the suit, could, by conveying to others create a necessity for introducing new parties."

In Equity Pleadings section 156, the Judge says :  "Generally speaking, an assignee, *pendente lite*, need not be made

a party to a bill, or be brought before the court; for every person, purchasing *pendente lite*, is treated as a purchaser with notice, and is subject to all the equities of the persons, under whom he claims in privity. And it will make no difference whether the assignee *pendente lite* be the claimant of a legal or equitable interest, or whether he be the assignee of the plaintiffs or defendants. Still however it is often important to bring such assignees before the court as parties by a supplementary bill, in order to take away a cloud hanging over the title, or to compel the assignee to do some act, or to join in some conveyance. So that such assignee, although not a necessary party, may at the same time be a proper party at the election of the plaintiff."

In Story's Equity Pleadings section 351, he says: "The voluntary alienation of property, pending a suit, by any party to it is not permitted to affect the rights of the other parties, if the suit proceeds without a disclosure of the fact, except so far as the alienation may disable the party from performing the decree of the court. Thus if, pending a suit by a mortgager to foreclose the equity of redemption, the mortgager makes a second mortgage, or assigns the equity of redemption, an adsolute decree of forclosure against the mortgager will bind the second mortgagee, or assignee of the equity of redemption, who can only have the benefit of a title so gained by filing a bill for that purpose. But upon a bill by a mortgager to redeem, if the mortgagee assigns *pendente lite*, the assignee must be brought before the court by the mortgager, who cannot otherwise have a re-conveyance of the mortgaged property. The bill in the latter case, is merely supplementary; but in the former case the bill must be an original bill in the nature of a cross-bill, to redeem the mortgaged property. If the party aliening be the plaintiff. in the suit, and the alienation does not extend to his whole interest, he may also bring the alienee before the court by a bill, which although in the nature of an original bill against the alienee will be supplemented against the parties to the original suit; and they will be necessary parties to the supplemental suit, only so far as their interests may be affected by the alienations. Generally, in cases of alienation, *pendente lite*, the alienee is bound by the proceedings in the suit after alienation, and be-

fore the alienee becomes a party to it; and depositions of witnesses taken after the alienation, but before the alienee became a party to the suit, may be used by the other parties against the alienee, as they might have been used against the party under whom he claims." See Mitf. Eq. Pl. by Jeremy and cases there cited; Cooper Eq. Pl. 77.

In section 342 of Story's Equity Pleadings the Judge says: "So, if the interest of a defendant is not determined, and only becomes vested in another subsequent to the institution of a suit, as in the case of alienation by deed or devise, or by bankruptcy or insolvency, the defect in the suit may be supplied by supplemental bill, or a bill in the nature of a supplemental bill, whether the suit has become defective merely, or is abated as well as become defective. For in these cases, the new party comes before the court exactly in the same plight and condition, as the former party, is bound by his acts, and may be subject to all the costs of the proceedings from the beginning of the suit. But this distinction is constantly to be borne in mind between cases of voluntary alienation and cases of involuntary alienation, as by the insolvency or bankruptcy of the defendant. In the latter cases, the assignee must be made a party; in the former he may or may not at the election of the plaintiff."

As to the frame and structure of the supplemental bill mentioned in said section 342, Story's Eq. Pl. See § 343 of the same. The said section 14 of chapter 139 modifies the general doctrine of *lis pendens* stated in said section 342 in certain cases therein named.

In section 349 of Judge Story's said work on Equity Pleading it is said: "So, if a sole *plaintiff, suing in his own right*, is deprived of his whole interest in the matters in question, by an event subsequent to the institution of a suit, as in the case of a bankrupt or insolvent debtor whose property is transferred to assignees; or in such a suit the plaintiff assigns his whole interest to another; the plaintiff in either case being no longer able to prosecute the suit for want of interest, and his assignees claiming by a title, which may be litigated, the benefit of the proceedings cannot be obtained by a mere supplemental bill; but it must be sought by an original bill in the nature of a supplemental bill."

In section 351 the Judge says: "Where a vendee files a bill for a specific performance of a contract for the purchase of land against the vendor, and pending the suit, he (the vendee) should sell to one or more sub-purchasers, in such a case, the sub-purchasers need not be made parties; and they would be bound by the decree in the suit. Indeed, they would have a right to insist, that their immediate vendor should proceed in the original suit for their benefit and at their charge, upon the ground, that by the sub-sale he had in effect become their trustee of all the rights under the original contract. But if the original vendee had entered into a contract with the sub-purchasers, not that he, but that the original vendor should convey to them, the sub-purchasers, if they purchased before any suit was brought, might then have been necessary and proper parties to a suit for a specific performance against the original vendor by the original vendee."

In section 328 the Judge says: "On the other hand, a suit may be perfect in its institution; and yet, by some event, subsequent to the filing of the original bill, it may become *defective,* so that no proceeding can be had, either as to the whole, or as to some part thereof, with effect; or it may become abated, so that there can be no proceeding at all, either as to the whole, or as to a part thereof. The first is the case, when, although the parties to the suit remain before the court, some event, subsequent to the institution of the suit, has either made such a change in the interest of these parties, or given to some other person such an interest in the matters in litigation, that the proceedings as they stand cannot have their full effect. The other is the case, when by some subsequent event, there is no person before the court, by whom or against whom the suit in the whole or in part can be prosecuted."

In section 329, same book, it is stated, that " it is not very accurately ascertained in the books of practice, or in the reports, in what cases a suit becomes defective without being absolutely abated, and in what cases it abates, as well as becomes defective. But upon the whole it may be collected, that if by any means any interest of a party to the suit in the matter in litigation becomes vested in another, the proceedings are rendered defective, in proportion as that inter-

est affects the suit; so that, although the parties to the suit may remain as before, yet the end of the suit cannot be obtained. Thus for example, if the party become bankrupt pending the suit, then, according to the practice of chancery, the suit will be held to be defective; but the bankruptcy does not cause an abatement," &c.

At section 330, same book, it is said: "There is the same want of accuracy in the books in ascertaining the manner, in which the benefit of a suit may be obtained, after it has become defective, or abated, by an event subsequent to its institution, as there is in the distinction between the cases, where a suit becomes defective merely, and where it likewise abates. It seems however clear, that if any property or right in litigation vested in a plaintiff is transmitted to another, the person, to whom it is transmitted, is entitled to supply the defects of the suit, if it has become defective merely; and to continue it, or at least to have the benefit of it, if it is abated. It seems also clear, that if any property or right, before vested in a defendant, becomes transmitted to another person, the plaintiff is entitled to render the suit perfect, if it has become defective, or to continue it, if it is abated, against the person, to whom that property or right is transmitted." See upon the subject under consideration Beame's Pleas in Equity, pages 287 to 301 inclusive, and especially 297, 298, 299. At page 299 Mr. Beame says:

"But if any doubt could be entertained as to the opinion of Lord Redesdale upon this point, the passages added by his Lordship to the last edition of his work seem to prove, that his Lordship considers bankruptcy as not constituting a ground of abatement. From the recent cases however the court of chancery, without expressing any opinion on the question, whether bankruptcy is an abatement or not, seems to have adopted the rule of considering the suit to be as defective, as if it were abated, and the bankrupt, when clothed with the character of plaintiff, is required, but by what kind of bill is not quite clear, to bring his assignees before the court in a reasonable time, or to submit to have the bill dismissed, though generally without costs," &c.

In the case of *Williams* v. *Kinder*, 4 Ves. (by Sumner) 387, it was held by the Chancellor in 1798–9: "By the insolvency

of the plaintiff pending the account the suit abated." But in a note to that case at page 388 it is said: "Whether bankruptcy is strictly to be termed an abatement, or not, still when a plaintiff becomes bankrupt, the suit becomes defective, and he must either procure his assignees to be made parties within a limited time, or his bill will be dismissed." See *Wheeler* v. *Malins,* 4 Mad. 171; *Randall* v. *Mumford,* 18 Ves. 427; *Porter* v. *Cox,* 5 Mad. 80.

In the case of *The Bishop of Winchester* v. *Paine,* 11 Ves. (by Sumner) 194, it was held, that subsequent mortgagees of an equity of redemption are bound by a decree of foreclosure though not made parties. An exception by a purchaser on that ground was disallowed; and a specific performance decreed with costs. See aslo *Murray* v. *Ballou,* 1 Johns. Chy. 576.

In the case of *Randall* v. *Mumford,* 18 Ves. (by Sumner) 424, it was held according to the syllabus: "By the bankruptcy of the plaintiff the suit becomes defective; if not abated by analogy to law. The assignees were ordered to be made parties in a limited time or the bill to be dismissed; whether with costs, *Quære.* Practice of the Court of Exchequer, holding the bankruptcy of the plaintiff no abatement and therefore dismissing the bill with costs for want of prosecution. Upon the bankruptcy of the plaintiff in an injunction bill the assignees to be made parties, or the injunction dissolved," &c. In this case according to the report the usual motion was made to dismiss the bill, which was for an account, for want of prosecution. The plaintiff had become a bankrupt. Lord Eldon in his opinion in the case at page 425 says: "It is clear, that bankruptcy is no abatement at law, but courts of law have modes of so regulating the matter, that finally no great injustice is felt." And at page 427 he says: "In this Court there are several decisions not very easily to be reconciled. * * * This Court however without saying, whether bankruptcy is or is not strictly an abatement, has said, that according to the course of the court the suit has become as defective, as if it was abated; and as the assignees will have the benefit of the suit, and assuming in practice, that he, who is a bankrupt, will continue so, the course, which the court has taken, is to require him to bring his assignees before it by bill of revivor or by supplemental bill in the nature of a bill

of revivor, or by whatever name it is called; and the court supposing, that the bankrupt will find the means of giving the assignees notice, and not trouble itself with that difficulty, dissolves the injunction frequently with great injustice, if they do not come here. The proper order in this case therefore is, that the assignees shall be brought before the court within a reasonable time, viz: the 1st of February; otherwise the bill to be dismissed," &c. Note 1 to this case at page 427 is as follows: "In *Wheeler* v. *Malins*, 4 Mad. 171, and *Porter* v. *Cox*, 5 Mad. 80, the bill was ordered to be dismissed, if the assignees would not file a supplemental bill within a fortnight. In the case of *Eades* v. *Harris*, 20 Eng. Chy. and 1 Young & Collyer 230, the syllabus is as follows : "One of several *cestuis que trust* having taken the benefit of the insolvent act, joins as a co-plaintiff with two others of the *cestuis que trust* in a bill to carry the trust-deed into execution ; the assignee of the insolvent being a defendant and the bill alleging, that there is a surplus coming to the insolvent after payment of all the debts. This is not a misjoinder, of which advantage can be taken at the hearing; and *semble* that it is no good ground of demurrer. With respect to the effect, which such assignments have upon the suit, there is no distinction between assignments *pendente lite* of equitable interests by plaintiffs and similar assignments by defendants."

The Vice Chancellor in delivering his opinion in this case at page 234 says: " As to John Eades," who was one of the plaintiffs, " he appears not to have taken the benefit of the insolvent act, and not to have become a bankrupt; but it seems, that after the suit had been commenced, he executed a private deed of assignment for the benefit of his creditors. I have looked at the will and the deed; it does not appear to me, that he had any legal interest; and I apprehend, that the circumstance of one of several plaintiffs executing after the institution of the suit an instrument, which merely affects that plaintiff's equitable interest, does not prevent the suit being heard, but that it may be heard, as if there had been no such assignment; and that those, who claim under it, must take such course to enforce their rights as they may be advised." In note 2 to this case the case of *Solomon* v. *Solomon*, 13 Sim. 516, is referred to.

In the last named case the syllabus is: " Some of the plain-
tiffs, who had an equitable interest only in the property in
question, mortgaged their interests pending the suit: Held at
the hearing, that the mortgagee was a necessary party." The
Vice Chancellor in his opinion in this case at page 517 says:
" I do not mean to pronounce any opinion upon the decision
in *Eades* v. *Harris,* the circumstances of which are different
from the circumstances of the case now before me. Suppose
that a mortgage is made to A. in fee; and then a second
mortgage, which is merely equitable, is made to B. and he files
a bill to redeem, and afterwards assigns his interest to D.;
can any person, who has the slightest experience in this Court,
say that the suit to redeem can be maintained? Here I find
the fact, that all the adult plaintiffs have parted *pro tanto* with
the whole of their interest to a mortgagee; and my opinion is,
that unless their mortgagee is made a party, the suit cannot
proceed." This case was decided in 1843, and the case of
*Eades* v. *Harris* was decided in 1842.

In 2d Daniel's Chancery Practice, 1st American edition,
by Perkins, at page 957 the author says: " We have next to
consider the case of the plaintiff becoming bankrupt, and
thereby rendering the suit defective; and the means by which
in such a case the defendant may either get the bill dismissed
or compel it to be prosecuted to a hearing. It has before
been stated, that the bankruptcy of a sole plaintiff does not
strictly cause an abatement, although it renders the suit de-
fective. The bankrupt plaintiff, however, is placed under an
incapacity to prosecute the suit, and by the non-prosecution
of the suit for a certain time the defendant acquires the
right to dismiss the bill. The ordinary order, which is made
upon the bankruptcy of the plaintiff before decree, is, that
the bill be dismissed without costs, unless the assignees file a
supplemental bill within three weeks. It does not seem clear
at what period after the bankruptcy the defendant is entitled
to move for an order of this nature. According to Sir John
Leach, V. C., ' it is hardly reasonable, that a bill should be
dismissed for want of prosecution as against assignees at an
earlier period, than it could according to the practice of the
court have been dismissed for want of prosecution, if the
plaintiff had not become bankrupt; for that would be to

deny to the assignees, who stand in the place of the bankrupt the same time for being advised as to the propriety of continuing the suit, which is afforded to the bankrupt, although the assignees cannot equally be informed as to the subject of the suit.'" And at page 958 of same book it is said: "The order to dismiss on occasions of abatement, or of the suit becoming defective, must not be confounded with an ordinary order to dismiss for want of prosecution; the two orders differ from one another so materially, both in the circumstances in which they may be obtained and the form of the order when it is made." See *Sharp* v. *Hullet*, 2 S. & S. 496. Also at page 958 Mr. Daniel says substantially, that where the suit becomes defective by reason of the plaintiff becoming bankrupt after suit brought, an order, that the bill should be dismissed without costs within a limited time, if the assignees do not think fit to file a supplemental bill, would be proper, provided the notice of this motion is served on the assignees. Where the defendant after suit brought becomes bankrupt, Mr. Daniel at page 959 of same volume speaks of what may be done on motion of the bankrupt defendant.

In the case of *Deas* v. *Thorne et als.*, 3 Johns. 543, the syllabus is as follows: "On an appeal from an order of the court of chancery postponing the hearing of the cause until the assignees of two of the parties, who had become insolvent pending the suit, should be made parties, this court will not hear or decide the merits of the cause. On an appeal from an interlocutory order of the court of chancery this court will not permit evidence to be read, which was not read in the court below, nor will they hear and decide on the merits, unless the merits have also been heard in the court below. When a party in a cause in chancery becomes insolvent pending the suit, his assignees must be made parties before the cause can be heard." In this case there were several defendants other than the two, who had become insolvent, and the two insolvents had obtained their discharges, and the chancellor in the court below in 1807 decreed, that the assignees of said two insolvents were necessary parties, and ordered, that the hearing of the cause should be further postponed, until they were brought before the court as parties, and from this order an appeal was taken.

In this case Judge Van Ness, who delivered the opinion of the court, at page 550 says: " It appears to me, that everything, which has been said to show, that the insolvents were necessary and proper parties to the suit before their discharge, applies with equal force, to prove that the assignees after that event were equally so. They stand in relation to this transaction precisely in the place of the insolvents."

In the case of *Sedgwick* v. *Cleveland et al.*, 7 Paige 287, it was held according to the syllabus : " As a general rule, the real persons in interest must be parties to a suit; and where the complainant after the commencement of a suit makes an assignment of his interest under the insolvent laws or otherwise, the assignee must be made a party, before the suit can be further proceeded in. When the complainant assigns his interest in the suit *pendente lite*, if the defendant wishes to have the suit brought to a termination, his proper course is to apply to the court for an order, that the assignee proceed and file a supplemental bill in the nature of a bill of revivor within such time, as shall be prescribed by the court, or that the bill in the original suit be dismissed. And due notice of the application should be given to the assignee as well as to the solicitor of the complainant. If a defendant voluntarily assigns his interest in the subject of the suit *pendente lite*, the complainant is not bound to make the assignee a party, unless he thinks proper to do so. *Aliter* where the assignment is by operation of law ; as in cases of bankruptcy or assignments under the insolvent acts."

In this case Chancellor Walworth in delivering the opinion of the court at pages 289 to 292 inclusive says: "If this had been the case of an assignee by the complainant under the insolvent acts, there could have been no possible doubt, that the suit had abated, or rather that it had become so defective, that the complainant could not proceed any further in his own name against the defendant, if the latter had thought proper to raise the objection. This Court requires the real parties in interest to bring the suit, except in certain cases where the complainant represents the rights of those for whom the suit is brought both legally and equitably, as in the case of executors, or of trustees, or assignees under the insolvent act. And where the sole complainant, who originally brought the

suit in his own name and not in *autre droit*, is discharged under the insolvent act and makes an assignment of his property for the benefit of his creditors, the assignee must be made a party before the suit can be further proceeded in. *Williams* v. *Kinder*, 4 Ves. 387. The proper course for the defendant in such a case, if he wishes to have the suit proceeded in or put an end to, is to apply to the court for an order that the assignee file a supplemental bill, in the nature of a bill of revivor, within such time as shall be prescribed by the court for that purpose, or that the complainant's bill be dismissed. And notice of such application should be served upon the assignee as well as the complainant in the original suit. (*Porter* v. *Cox*, 5 Mad. 80). This proceeding is in analogy also to the statutory direction in case of the abatement of a suit by the death of the sole complainant, where his representatives neglect to revive the suit. (2 R. S. 185, §§ 118, 124). From the report of the case of *Massey* v. *Gillelan*, 1 Paige 644, it would seem to have been decided, that the suit might be continued, as at law, in the name of the original complainant, upon his giving security for costs. The question however, as to the right of the complainant to proceed without bringing the assignees before the court by a supplemental bill, was neither raised nor considered in that case, as the defendant merely asked, that the suit should not be permitted to proceed in the name of the insolvent debtor, unless security for costs was filed. But in the subsequent case of *Garr* v. *Gomez*, in the court for the correction of errors, (9 Wend. 649) the principle, that the suit becomes defective in such a case and cannot be proceed in, if objected to by the defendant, until the assignees are brought before the court, is distinctly recognized. It is proper also to remark, that in the case of an assignment under the bankrupt or insolvent acts the suit is not strictly abated even as to the complainant, but is merely become so defective that he cannot proceed therein, until the assignee is brought before the court. And the assignee becomes so far the legal and equitable representative of the rights of the complainant, that upon a new and supplemental bill in the nature of a bill of revivor and supplement being filed by the assignee, to continue the proceedings in his own name, it is not necessary to make the former complainant a party thereto

which would be necessary in the case of an assignment of only a part of the interest of the complainant in the subject matter of the suit. The complainant, however, who has still an interest in having his debts paid out of the assigned property, or at least has an interest in the surplus, if there should be any, is not obliged to abandon the suit absolutely, if the suit is necessary for his protection, although the assignee refuses to proceed therein, without making any compromise of the suit with the defendant. In that case the complainant may proceed in his own name; but as the assignee has become a necessary party to all subsequent proceedings in the suit, the complainant must bring him before the court by supplemental bill. (Mitf. Pl. (4 Lon. ed.) 66; Story Eq. Pl. 282, n.; 2 Johns. Chy. 18). In such a case, however, the complainant might be required to file security for costs, as directed by the third subdivision of the 1st section of the title of the Revised Statutes relative to the security for the payment of costs. (2 R. S. 620).

"In the case of defendants where interest in the subject-matter of the litigation becomes vested in others, *pendente lite*, without an actual abatement of the suit, a distinction is very properly made between the transfer of that interest by the mere voluntary act of the defendant, as in the case of a sale or assignment in the ordinary course of business, and a transfer of that interest by operation of law, as upon an assignment in bankruptcy or under our insolvent acts. In the first case the complainant is not bound to make the assignee a party, although he may do so, if he deems it essential to the relief, to which he may be entitled against such assignee. But in the last case the assignee, who has become such by operation of law, has a right to be heard, and must be made a party before the suit can be further proceeded in. The reason of the distinction is obvious. In the first place the assignee, who is a mere volunteer-purchaser *pendente lite*, cannot defeat the complainant's rights or delay his proceedings by such purchase; for, if he could do so, the litigation by successive assignments might be rendered interminable. He therefore has no right to be heard, unless he brings himself before the court by a supplemental bill in the nature of a cross-bill, which he may sometimes do to protect his rights as such as-

signee; and the decree in the original suit to which such· assignee was not a party will bind the property in his hands. Neither can the defendant, who has made such voluntary assignment subsequent to the commencement of the suit, urge that as a reason, why the suit should not proceed against him in the same manner, as if no such transfer had been made. In the other case the assignee, upon whom the interest ·of the defendant has been cast by operation of law for the benefit of others, has a right to be heard for the protection of that interest. And the whole legal and equitable interest therein, which formerly belonged to the defendant, being vested in such assignee by the mere operation of the law itself, he will not be legally or equitably bound by a decree to which he is no party. (*Deas* v. *Thorne*, 3 Johns. 544.) The reasons for the difference between the two cases do not exist in relation to the transfer of the interest of the complainant; and where the adverse party makes the objection to his proceeding in his own name without bringing the assignee before the court. The party whose interest in the subject-matter of the suit has become divested *pendente lite* can only object to the proceedings of his adversary in the suit, where such interest has become vested in another by operation of law and not by his own voluntary act. But where the party who has assigned the whole or a part of his interest in the subject-matter of the suit attempts to take any active proceeding therein, the adverse party may object to such proceeding on the ground, that the suit has become abated or defective as to such assignee, so that the same cannot be proceeded in until the assignee is made a party. Perhaps there may be some exceptions to this rule, particularly when the adverse party, after he becomes acquainted with the fact of such assignment, does some act or takes some proceeding in the cause, on his part, which amounts to a legal waiver of his right to urge the objection that the suit had abated or become defective by reason of the transfer of the interest." (This case was decided in 1838.)

I have quoted thus extensively from the opinion of Chancellor Walworth, because in his opinion he enters more extensively and minutely into the questions now being considered by me than any one text-book or authority I have seen bearing upon the subject.

The case of *Harmon* v. *Byram's adm'r et al.*, 11 W. Va. 511, was brought to enforce satisfaction of a docketed judgment-lien against the realty of said Byram, who died after the commencement of the suit, and Patton, who presented his petition to the court, was a *pendente lite* purchaser of land of Byram, upon which the judgment was a lien. Patton the *pendente lite* purchaser prayed the court in his petition to be made a party defendant in the cause, and the plaintiff objected to the filing of the said petition, and the court sustained the objections. The general rule announced in the third and fourth sections of the syllabus of this case is based upon section 156 of Story's Equity Pleading, which I have already cited, and is correct as applied to the case. In that case it is clear, that the plaintiff was not bound to make the *pendente lite* purchaser a party thereto. See opinion of Judge Johnson, 11 W. Va. 521, 522, and the authorities I have before cited. But to the said general rule I apprehend there are exceptions, and I think the authorities I have cited clearly show such to be the case. It is apparent from the language of the syllabus to which I have referred, that by the general rule there announced it was not intended to assert, that there were not or should not be exceptions thereto.

In the case of *Gillespie et ux.* v. *Bailey et al.*, 12 W. Va. 70, the 5th section of the syllabus is : "If the plaintiff, after the institution of a suit to partition land, sells the land, the case properly proceeds in his name, as though no such sale had taken place." In this case Bailey, one of the defendants, in his answer alleges, that he is informed and believes, that the complainants a few days before the commencement of the suit, by a deed, while he was in the adversary possession of the land, conveyed it to John J. Jackson, their attorney, for $300.00, of which $200.00 was to be paid on a contingency ; and that John J. Jackson was prosecuting the suit at his own costs and for his own benefit in the name of the complainants ; and the complainants having no interest in the land when the suit was brought and said Jackson being guilty of maintenance and champerty the suit ought to be dismissed. See page 86. At page 87 Judge Green, who delivered the opinion of the Court, says upon this subject : "The burden of proof being on the defendant, Bailey, to show that the deed was made be-

fore the service of the summons in this action, he has failed
to meet this burden ; for his evidence fails to prove, that this
deed was made before the institution of this suit. The date
given by one of the magistrates would be before, but that
given by the other would be since. If the deed was executed
since the institution of the suit, it would have no effect upon
it as Jackson would then be a *lis pendens* purchaser; and the
suit ought to be prosecuted precisely as if he had not pur-
chased. There is no evidence to show by whom the costs of
this suit were borne. We need not therefore enquire into the
correctness of the legal positions taken on this point in
Bailey's answer, as they do not arise, the facts necessary to
raise such a question not being proven." This is substan-
tially all the judge said upon the subject and is all that is
material appearing in the case, so far as I have been able to
ascertain. It does not appear, that the defendants or any of
them had ever made any suggestion in the court below, that
the suit had become defective after its commencement by
reason of the defendant having subsequent to its commence-
ment conveyed his interest in the subject of the suit to Jack-
son, and objected in any way to the suit proceeding further
before the court without Jackson becoming a party thereto by
proper bill or otherwise, because of his having conveyed his
interest in the subject of the suit to Jackson, after the suit was
commenced, notwithstanding the suit had been pending in the
circuit court for a great many years prior to its decision.

Under this State of the case Judge Green in his opinion
simply announced according to my understanding the general
rule as to *lis pendens* purchasers, and that it was proper under
the circumstances in that case appearing before the Appellate
Court, that the cause should have proceeded, as it did, before
the court below in the name of the complainants. I do not
understand the syllabus I have quoted or the opinion of Judge
Green on that subject to have declared or to have intended to
declare a universal rule or principle, to which there were no
exceptions ; or that in that particular case the ruling should or
would not have been different according to the principles and
rules of courts of equity under a different state of facts and
circumstances.

After considering the authorities, to which I have referred,

I have arrived at the following conclusions, viz : A court of equity requires the real parties in interest to bring the suit, except in certain cases where the complainant represents the rights of those for whom the suit is brought, both legal and equitable, as in the case of trustees or assignees under insolvent acts, or assignees in bankruptcy. And where the sole plaintiff, who originally brought the suit in his own name and not in *autre droit,* is discharged under insolvent acts and makes an assignment of his property for the benefit of his creditors, or where such plaintiff has been declared a bankrupt, the assignees must be made parties before the suit can be further proceeded in. In such case or cases the suit does not *abate* in the strict meaning of that word, but becomes so defective, that it cannot be further proceeded with in their absence. And in some other cases, where the transfer *pendente lite* is considered as a transfer by operation of law and not voluntary, perhaps the same rule should be applied. Where the sole plaintiff voluntarily transfers or assigns his interest in the estate or property, which is in controversy in the suit, after the suit is brought, the suit does not thereby abate, and in many cases it does not thereby become so defective, that it cannot be further proceeded with, unless such transferee or assignee is made a party thereto, for the reason that in such case such transferee or assignee is a *lis pendens* purchaser from the plaintiff and as a general rule in such case is bound by the decision of the suit, in which the estate or property transferred or assigned is in controversy. But perhaps there may be cases, where, if the sole plaintiff transfers or assigns his interest in the estate or property, after the suit is brought, the suit thereby becomes so defective, that it cannot be proceeded in to final adjudication, until the transferee or assignee is made a party. It is unnecessary for me to undertake to specify such cases at this point. But where the sole plaintiff voluntarily transfers or assigns his interest in the estate or property in controversy in the suit, after the suit is brought, although the suit does not thereby abate, still it may be considered as having thereby become more or less defective according to the circumstances of the case under the rules and principles governing courts of equity ; and in such case the defendant may object to the cause further proceeding without

such transferee or assignee being made a party plaintiff and may apply to the court for an order, that such transferee or assignee proceed and file a supplemental bill in the nature of a bill of revivor within such reasonable time, as shall be prescribed by the court, or that the suit be dismissed. And due notice of the application should be given to the transferee or assignee, as well as to the plaintiff or to his counsel in the cause.

It seems to me however, that the fact of such transfer or assignment may also be brought into the cause by answer properly supported, not as matter in bar to the suit or in abatement thereof, and the defendant may proceed by rule served upon the transferee or assignee and upon the plaintiff or his counsel in the cause, as was done in the case at bar. Upon such proceedings being had, if it appear to the court, that the plaintiff has transferred or assigned his interest in the subject of the suit, the court may order, that unless the transferee or assignee do file such supplemental bill within a reasonable time thereafter, the original bill shall be dismissed, &c. And the court in such case should dismiss the suit, unless its order be complied with, except in a case where the cause does not appear to have become so defective by reason of the transfer or assignment that it cannot be proceeded with, and the defendant has been in default for an unreasonable time after knowledge of such transfer or assignment in taking action for the requirement of the supplemental bill in the nature of a bill of revivor to be filed or the dismissal of the bill.

I apprehend, that where a sole plaintiff after suit brought in equity in his own name voluntarily transfers or alienes his entire interest in and to the subject in controversy in the suit, even when such transfer does not render the suit so defective, that it cannot be further proceeded with without such transferee or alienee becoming party to the suit, it is competent and in some cases eminently just for the defendant to be entitled to insist, that such transferee or alienee shall become a party to the suit, or that the same shall be dismissed, and this especially so with reference to his costs of suit. There is an obvious difference between necessary parties to a suit and proper parties thereto, as we have already seen. We have already seen, that if the party aliening be the plaintiff to the

suit, and the alienation does not extend to his whole interest, he may also bring the alienee before the court by a supplemental bill. And I apprehend the defendant may require it to be done, if he acts in proper time.

The deed from the plaintiff to Gilbert G. Sawtell, dated the 23d day of April, 1874, in the supplemental answer mentioned is valid to convey to said Sawtell the plaintiff's right to the purchase-money of that part of the land in controversy conveyed by the plaintiff and his wife by deed dated the 14th day of April, 1874, to Theodore Fink in trust, &c., in said supplemental answer mentioned. *Zane* v. *Sawtell et al.*, 11 W. Va. 43. I presume however, that the lots in said deed-of-trust are a part of the eight acres conveyed by John Fink to the defendant, Caroline V. Zane, by the deed in the bill mentioned, though this does not distinctly appear. The said deed from the plaintiff to said Sawtell upon its face in effect not only conveyed and passed to Sawtell all of plaintiff's right, title and interest in the purchase-money of that part of the land in controversy in this suit conveyed by the plaintiff and his wife by deed dated the 14th day of April, 1874, to Theodore Fink in trust, &c., but the plaintiff's entire interest in the residue of the land in controversy at the date of the said deed from the plaintiff to said Sawtell. According to the theory of the plaintiff's bill, admitting its allegations to be true, he had at the commencement of this suit at most, if anything, only an equitable interest in the land, or perhaps I should more properly say, the equity of redemption thereof. He had previously passed from himself the legal title thereto by deed. The plaintiff after the date of the deed to Sawtell, according to the face of the deed, ceased to have any interest in the subject in controversy in this suit, and it seems to me, that under such circumstances, if the fact were true, according to sound equitable rules the defendants, if they did not delay action too long or otherwise waive their privilege, might have been entitled to require Sawtell to become a plaintiff to the suit by proper bill, or to have the suit dismissed, unless something else appeared as to the interest of the plaintiff in the subject of the suit. But it seems to me, that the question, whether the plaintiff had in fact parted with his entire interest in the subject in controversy, was not put in issue or passed

upon by the court below; and that it in fact was not necessary for the court to pass upon that question under the answers to the rule. Upon sound principles defendants by laches and unreasonable delay and other acts, such as are mentioned in the answers to the rules in this case, may and should be considered to have waived their privilege in this respect, if such right in fact did exist under the facts of the case, especially where no sufficient excuse is shown for such laches and delay and action, if the transferee or assignee are not necessary parties to the suit.

In this case it appears, that the defendants made no objection whatever to the case proceeding in the name of the plaintiff for nearly two years from the date and recordation of the said deed to Sawtell; and they do not attempt to give any excuse whatever for such delay; and in connection therewith they otherwise did and acted in the cause after the recordation of said deed to Sawtell, as in the said answers to said rule is stated and set forth. And taking all these matters together I think it should be taken and considered, that the defendants waived whatever right or privilege they may in fact have had to object to the cause being further proceeded with in the name of the plaintiff without Sawtell becoming a party plaintiff, because if Sawtell is in fact the owner of plaintiff's entire interest, he is a *lis pendens* purchaser from the plaintiff, and in that case he will be bound by the decision of this suit, so far as the defendants are concerned, as much as though he was an actual party thereto. Our statute touching the recording of notice of *lis pendens* does not apply to such a case; and I do not consider Sawtell as being a necessary party to the suit, if he is in fact the owner of plaintiff's entire interest in the subject in controversy or a part thereof. The plaintiff must be considered as prosecuting this suit for his own benefit or for the benefit in whole or in part of said Sawtell as a *lis pendens* purchaser; and it is immaterial and unnecessary for this court to ascertain and determine under the circumstances, for the benefit of which of the two the suit was prosecuted in whole or in part in the court below; for whether the suit was in fact prosecuted for one or the other in whole or in part, the plaintiff, James W. Zane, had the right to apply for and prosecute this

appeal. The order of the court discharging the said rule was not appealed from ; and I doubt if it could be under our law, even if erroneous ; but I do not now decide that question, as it is immaterial in this case.

Entertaining these views I do not think the court erred in discharging the said rule. The defendants in their supplemental answer seem to have supposed, that the matters therein set up were matters in bar or abatement of the suit, which is a mistake under the authorities upon the subject. •

I will now proceed to consider this cause upon the appellant's assignment of errors contained in' his petition for an appeal and *supersedeas.* The errors assigned and relied upon are as follows:

"1. The court erred in suppressing the deposition of your petitioner, so far as it affected Caroline V. Zane.

"2. The court erred in suppressing the said deposition, so far as it related to personal transactions or communications with said Theodore Fink.

"3. The court erred in dismissing the bill of complaint.

"4. The said decree is in other respects uncertain, informal and erroneous."

*The first assignment of error considered.*—The 22d and 23d sections of chapter 130 of the Code of this State of 1868 are as follows: "22. No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event thereof. 23. A party to a civil action, suit or proceeding may be examined as a witness in his own behalf, or in behalf of any other party in the same manner and subject to the same rules of examination as any other witness, except as follows :

"I. An assignor of a chose in action shall not be examined in favor of his assignee, unless the opposite party be living.

"II. A party shall not be examined in his own behalf in respect to any transaction or communication had personally with a deceased person, against parties who are the executors, administrators, heirs-at-law, next of kin, or assignees of such deceased person, where they have acquired title to the cause of action from or through such deceased person, or have been sued as such executors, administrators, heirs-at-law, next of kin, or assignees but where such executors, administrators,

heirs-at-law, next of kin or assignees shall be examined on their own behalf in regard to any conversation or transaction with such deceased person, then the said assignor or party may be examined in regard to the same conversation or transaction.

"III. If a deposition of a party to the action, suit or proceeding has been taken, and he shall afterwards die, and after his death such deposition be used upon any trial or hearing in behalf of his executors, administrators, heirs-at-law, next of kin, or assignees, the other party or assignor, shall be a competent witness as to any and all matters to which such deposition relates.

"IV. This and the preceding section shall not apply to any action, suit or proceeding prior to the 7th day of February, 1868, in which a judgment or final decree has been obtained, and a new trial or re-hearing has been or shall be awarded therein; but in all such actions, suits or proceedings, the rules of evidence shall be the same as if this and the preceding section had not been enacted.

" V. A husband shall not be examined for or against his wife, nor a wife for or against her husband, except in an action or suit between husband and wife.

" VI. A guardian, committee, or other fiduciary shall not be examined as a witness against his ward, or the person he represents as to any transaction in his fiduciary capacity, unless the ward or person affected thereby is in a condition to testify as to the same transaction.

" VII. A party to an action, or person interested in the event thereof, shall not testify in his own behalf against a deaf or dumb person, unless the evidence of such deaf or dumb person has been taken in the case."

It has been held by this Court, that these sections of chapter 130 of the Code of 1868 make no material change in the common law as to husband and wife giving evidence for or against each other in a cause, in which they are parties, except in an action or suit between husband and wife; that in such case the 23d section, and especially the fifth exception thereof, so modifies the common law as to allow husband and wife to be witnesses for and against each other in suits between themselves; that it may be that in some cases brought

by husband and wife, for certain causes of action, the wife, where she is the meritorious cause of action, may be admitted to give evidence, but this question did not arise in the case, to which I refer, and was not therein decided. *Hill et ux. v. Proctor; Proctor v. Hill, ux. et al.,* 10 W. Va. 59, 82 and 83. By the common law it seems, that neither the husband nor wife is admissible as a witness in a cause civil or criminal, in which the other is a party. This rule is founded partly on the identity of their legal rights and interests, and partly on principles of public policy. The principle of this rule requires its application to all cases, in which *the interests* of the other party are involved. Nor is there any difference in principle between the admissibility of the husband and that of the wife, where the other is a party. And when the husband or wife is not a party to the record, but yet has an *interest directly involved* in the suit, and is therefore incompetent to testify, the other also is incompetent. 1 Greenl. on Ev. §§ 334 to 341 inclusive, and cases there cited in notes. See also *Hill et ux.* v. *Proctor,* 10 W. Va. 82.

In the case of *Lawrence et al.* v. *DuBois et al.,* 15 W. Va. 443, it was held, that "in a suit, where a husband and wife are defendants, the evidence of the husband cannot be received for the wife." In this case at page 458 Judge Green in delivering the opinion of the Court says: "The New York authorities, referred to by the appellee's counsel to show, that a husband may be a witness on behalf of his wife, are entirely inapplicable, as they hold this is so only by virtue of their statute-law, which is materially different from our statute-law. The 5th section," meaning the fifth exception, "above quoted is not, and never has been a part of the New York statutes; and it was inserted expressly to prevent the interpretation being put on our laws, which by these New York decisions had been put upon their statute-law."

The said sections 22 and 23 of the 130th chapter of the Code of 1868, with a part of said exceptions contained in said section 23 were first enacted by the Legislature of this State on the 7th day of February, 1868, before the passage of the Code of 1868. See Acts of 1868, pages 10 and 11. The 1st section of the act of 1868, is the same as the 22d section of chapter 130 of the Code; and the 2d section of said

act is the same as said 23d section of said chapter down to
the first exception therein.   The first exception contained in
said 23d section is the same as the first exception contained in
the 2d section of said act, with the exception that the words
"and in reach of the process of the court," contained in the
exception in the act and at the end thereof, are omitted in the
said 23d section.   The 2d, 3d and 4th exceptions contained
in the said 23d section are the same, as the 2d, 3d and 4th ex-
ceptions contained in the said 2d section of said act.   But the
5th, 6th and 7th exceptions contained in the said 23d section
are not contained in the 2d section of said act or any other
part thereof; they are additions to the exceptions contained in
the said 2d section of said act enacted by the Legislature for the
first time in the Code of 1868.   After the passage of said act of
1868, it was supposed by some of the legal profession, that one
effect of section 2 thereof was the repeal of the common law
rule as to the incompetency of a husband and wife to testify
for or against each other, at least where they were parties to
the record; and others claimed, that such was not the effect or
purpose of the Legislature, that the only purpose of the Leg-
islature in the passage of said act was by the 1st section
thereof to render competent as witnesses all persons, who were
excluded by the common law simply because of their interest
in the event of the suit, and by the 2d section thereof to repeal
or modify the common law rule, "that a party to the record in
a civil suit cannot be a witness either for himself, or for a
a co-suitor in the cause" (1st Greenl. on Ev. §§ 329, 330),
and that it was not the purpose or intent of the Legislature in
enacting either or both of said sections of the act to repeal
the common law rule as to the incompetency of a husband and
wife to testify for or against each other.

Under this condition of things the Legislature in framing
the Code of 1868 in effect amended and re-enacted the said act
of February, 1868, as it now appears in the 22d and 23d sec-
tions of chapter 130 of the Code.   Divesting said 23d section
of all exceptions therein contained except the 5th, it reads as
follows:   "A party to a civil action, suit or proceeding may
be examined as a witness in his own behalf, or in behalf of
any other party in the same manner and subject to the same
rules of examination, except as follows:   *   *   *   A hus-

band shall not be examined for or against his wife, nor a wife for or against her husband, except in an action or suit between husband and wife." This section thus rendered certainly may be construed as enacting a general rule but with an exception thereto. The general rule is the common law rule, and the exception is an innovation upon that rule and makes the husband and wife respectively competent to testify for or against each other, where the action or suit is between husband and wife. Now the question is, what does the Legislature mean, when it says in said 5th exception, "except in an action or suit between husband and wife." The literal construction of these words, when read in connection with what has preceded, it seems to me, is this: *except in an action or suit between husband and wife alone; that is to say, in an action or suit in which the husband and wife alone are parties to the record.* But in my judgment the literal meaning of these words is not the meaning intended by the Legislature. For if this be so, then in an action or suit, in which the husband was a plaintiff and the wife a defendant, to which there were other parties merely formal, without any material interest in the controversy involved in the suit, the husband and wife would each be incompetent to testify in the case for or against the other. This surely could not have been the intent or purpose of the Legislature by the use of these words in the connection in which they are employed—it falls short of what, it seems to me, was the manifest purpose of the Legislature from reading the said exception contained in said exception five with what precedes and follows it.

It must be admitted, that the said fifth exception is so written, that it is complex, and its meaning not plain when literally construed. But reading the whole of said exception together and with what precedes and follows, it seems to me, that the spirit, purpose and intent of the Legislature by the use of the said words "except in an action or suit between husband and wife" was, that a husband and wife should be competent to testify for or against each other in a suit touching any matter in controversy involved therein between themselves alone, whether they are the only parties to the suit or not. In my judgment it must be held in construing the said fifth exception, to carry out the purpose and intent

of the Legislature thereby, that *where a husband and his wife and another or others are parties to a suit, the husband and wife are incompetent to testify as witnesses for or against each other, except as to a controversy or controversies between the husband and wife alone, in which the husband and wife are alone materially interested, involved in such suit ;* or in other words, where a husband and his wife and another or others are parties to a suit, the husband and wife are incompetent to testify for or against each other as to any controversy, to which such other or others are parties having a material interest involved in the suit ; but in any controversy or controversies between husband and wife alone, in which they alone are materially interested, involved in such suit the husband and wife are competent to testify for or against each other.

To this construction there may be some exceptions not now occurring to me or arising in the case at bar, which must be passed upon, as they shall hereafter be presented. I do not venture now to give a full and complete construction of said exception five as to all questions, which may arise or be presented under it ; but only to·construe its meaning, in so far as it is material or necessary to determine correctly the questions presented thereunder in this case.

The object and purpose of taking the deposition of the plaintiff (James W. Zane) filed in this cause was to prove the material allegations of the bill, to prove that in fact the deed from the plaintiff and his wife to Theodore Fink for the land therein conveyed in the bill mentioned was but a mortgage in equity, or facts from which a court of equity under the principles and rules, which govern it in such case, is authorized to declare said deed a mortgage to secure said Theodore Fink for debts of the plaintiff, which he might pay, and which he agreed to pay and did pay, and to prove that the defendant, John Fink, at the time he received the deed from Theodore Fink and his wife for the same land in the bill mentioned, had notice, that said deed to said Theodore Fink was in fact only a mortgage for the purpose aforesaid, and that he took the deed from said Theodore Fink and wife subject to such mortgage and to secure the said John Fink in any of said debts he might pay, &c.

It is alleged in the bill, that after the date of said deed

from Theodore Fink and wife to John Fink for said land the said John Fink and his wife executed to his daughter, Caroline V. Zane, the wife of the plaintiff, a deed conveying to her in consideration of "natural love and affection and five dollars," about eight acres of said land so conveyed to him by said Theodore; and the bill charges, that said deed to said Caroline V. Zane was without any reasonable consideration in fact (which is not denied in the answer) and that it is void as to him. Now it is plain, that under the allegations and prayer of said bill and the other pleadings in the case the deposition of the plaintiff tending to prove, that the deed from him and wife to said Theodore Fink and wife, and the deed from said Theodore Fink and wife to said John Fink were of the character above alleged, is against his wife as to a controversy or controversies between the plaintiff and his wife involved in this suit, to which the plaintiff and his wife are not the only parties thereto materially interested. Said Theodore Fink and John Fink are made defendants to the bill and they are also parties to said controversy and materially interested therein. It is true, that said Theodore Fink died after the plaintiff's said deposition was taken in the cause, but after his death Angeline P. Fink, the wife of said Theodore Fink, was appointed administratrix of her husband's estate; and this suit was revived against her as such administratrix as a defendant, and she upon the revival of the suit against her as such administratrix became a party to said controversy or controversies in place of her husband. It has been suggested, that after the plaintiff conveyed the land in controversy to Sawtell he ceased to be more than a formal party, except as the representative of Sawtell, and that he therefore is competent to testify for or against his wife in the cause. It seems to me, that the spirit of said fifth exception is against this position as well as the common law unrepealed by said 22d and 23d sections, and that the case of *Hill* v. *Proctor, ubi supra,* in effect settles that question. The rule, which restricted husband and wife from testifying for or against each other, was not based upon a supposed interest in the suit but upon grounds of public policy. *Burrell* v. *Bull,* 3 Sandf. Chy. 15; *Erwin* v. *Smaller,* 2 Sandf. 340; see 6 Abbott's N. Y. Dig. R. and Stat. pp. 195, 196, §§ 150 and 153 and the cases there cited. Un-

der the views I have expressed as to the law in this case and the facts, appearing it seems to me that the circuit court did not err in suppressing the deposition of the plaintiff as against the said Caroline V. Zane.

*The second assignment of error considered.* As we have seen, the second exception contained in the said 23d section of chapter 130 of the Code provides, that " A party shall not be examined in his own behalf in respect to any transaction or communication had personally with a deceased person, against parties who are the executors, administrators, heirs at law, next of kin, or assignees of such deceased person, where they have acquired title to the cause of action from or through such deceased person, or have been sued as such executors, administrators, heirs at law, next of kin, or assignees. But where such executors, administrators, heirs at law, next of kin, or assignees shall be examined on their own behalf in regard to any conversation or transaction with such deceased person, then the said assignee or party may be examined in regard to the same conversation or transaction ;" and the third exception contained in the same section provides, that " if the deposition of a party to the action, suit or proceeding has been taken, and he shall afterwards die, and after his death such deposition be used upon any trial or hearing in behalf of his executors, administrators, heirs at law, next of kin, or assignees, the other party, or assignor, shall be a competent witness as to any and all matters, to which such deposition relates."

In the case of *Owens* v. *Owens's adm'r*, 14 W. Va. 88, an action of *assumpsit* brought by the plaintiff against the defendant as administrator of his decedent, to recover chiefly for work and labor done by the plaintiff for the defendant's decedent during his life, under said second exception it was held : " 1. That the circuit court erred in permitting the plaintiff to testify as a witness in her own behalf as to her work and labor and services rendered for the deceased and what things she did in and about the labor, she claimed to have performed for the deceased in his lifetime, whilst she lived with him and had taken charge of the household affairs of the deceased and had sold produce and bought provisions for the house with such produce and

nursed deceased in his sickness. 2. That the plaintiff was incompetent to testify as a witness in her own behalf to said matters under the provisions of paragraph II of the 23d section of chapter 130 of the Code of 1868 of this State."

The deposition of the plaintiff in question appears to have been taken on the 21st day of December, 1874. It does not appear, when the said Theodore Fink died; but it does appear, that on the 19th day of April, 1875, the death of said Theodore Fink was suggested in court, and that his widow, Angeline P. Fink, had been appointed his administratrix; and the cause was revived against her as such administratrix in place of her husband. It must be taken, that said Theodore Fink died between the date of the taking of plaintiff's said deposition and the revival of the cause against his administratrix on the 19th day of April, 1875. It seems, that both plaintiff and defendants took depositions in the cause after the death of said Theodore Fink. The deposition of said Theodore Fink does not appear to have been taken after the deposition of the plaintiff was taken, nor was it taken before, so far as appears by the record. The cause first came on to be heard on the 5th day of May, 1877, when the court directed an issue to be tried by jury. Afterwards, on the 23d day of March, 1878, the court set aside the order directing an issue to be tried by a jury and suppressed the plaintiff's said deposition as to his wife, Caroline V. Zane, and also suppressed the plaintiff's said deposition, so far as it relates to personal transactions or communications with the said Theodore Fink, deceased, as against the said Angeline P. Fink, administratrix, &c., as set forth in the decree of that date. The court at the date last aforesaid finally heard the cause and dismissed the plaintiff's bill.

It does not appear, that the deposition of the said Angeline P. Fink administratrix as aforesaid was ever taken in the cause. It does not appear, that the depositions of any of the heirs or next of kin of said Theodore Fink were taken in the cause. It does appear, that the deposition of the defendant, John Fink, his father, was taken in the cause and I infer was read as evidence at the hearing; but John Fink states in his deposition, that he was not present at the time the deed was made, and does not testify as to the communications and

transaction, which the plaintiff testifies in his deposition was had by and between him, plaintiff, and said Theodore Fink at the time the deed was made, or as to any communication or transaction, as to which plaintiff testifies in his own behalf, which was suppressed by the court as against said Theodore's administratrix; and these last named communications and transactions, as to which the plaintiff testifies, are the material parts of plaintiff's deposition as to communications between plaintiff and said Theodore, deceased, and the transaction of making said deed of conveyance by him, plaintiff, to said Theodore Fink, deceased. It is not pretended, that if the plaintiff's deposition as to said communications or transactions had been taken in his own behalf after the death of said Theodore Fink, it was competent under the circumstances to read it in his own behalf as evidence against the administratrix of said Theodore. And it seems to me, that if it were claimed, that it would be competent to read the plaintiff's deposition under such circumstances in his behalf as to said communications or said transactions as against the administratrix of said Theodore, such claim is not sustained or authorized by the said second or third exceptions contained in said section 23. Does the fact, that the said deposition of the plaintiff was taken before the death of said Theodore Fink, and that said Theodore was present by his counsel and cross-examined the said plaintiff, make any difference in fact as to the competency or authority to read the said deposition after the death of said Theodore against his administratrix? Suppose it appeared in the case, that said Theodore was taken suddenly ill and died within an hour after the deposition of plaintiff was taken; or suppose he had been taken sick in a day or a week after plaintiff's deposition was taken, and his condition from that time to his death, whether for weeks or months, was such that he was unable to give his deposition from any cause, is it contemplated by the said second exception, that in such cases it is competent to read the deposition of the plaintiff against the administratrix of said Theodore Fink, deceased, except in the cases provided for in the last clause of said exception? I answer emphatically in the negative.

When is the court called upon to determine the question, whether a party shall be examined in his own behalf as to

communications or a transaction had personally with a deceased person, &c., and what is the meaning of the words " shall not be examined " in their connection in said exception two ? It is manifest to me that the words " shall not be examined " mean the same as, shall not testify, &c., or shall not give evidence, &c., or his evidence as a witness shall not be heard, received or read in his own behalf against the administrator, &c. The first clause of said exception two establishes a rule as to the subject of the said exception to the first clause of said 23d section ; and the last clause of said second exception establishes an exception to that rule. And the said third exception also establishes another exception to the same rule. The deposition of parties or other witnesses as a general rule are not taken before the court in suits in chancery. They are taken out of court; and generally the court cannot determine the right of a party to testify as to any matter, as to which he is examined, when he gives his deposition.

In the case of *Quick* v. *Brooks, adm'r.*, 29 Ia. 484, it was held according to the syllabus, that "where pending an action the defendant died, and his administrator was substituted, the deposition of plaintiff taken in the action before the death of the decedent was not admissible in behalf of the plaintiff in view of section 3982 of the Revision, which prohibits a party from testifying, when the adverse party is the executor or administrator of a deceased person." Judge Wright in delivering the unanimous opinion of the Court at pages 485 and 486 says : "The single question then is, can this deposition, taken in the life-time of the intestate, in reference to matters transpiring before that time, when he was present and had full opportunity to cross-examine, be used as evidence after his death, against the objection of the administrator. It seems to us, that the spirit and meaning of the law, forbid the admission of the testimony, and that the ruling below was no error.

"We quote the language of the statute (Rev. § 3982) as we have in many prior cases, that no person shall be allowed to testify under the provisions of section 3980 (which makes parties competent to testify), where the adverse party is the executor of a deceased person, when the facts to be proved transpired before the death of such deceased person etc. Within

the meaning of this statute when did plaintiff testify? At
the time his deposition was taken, or at the time of its use at
the trial? We clearly think the latter. * * When is the
court called upon to determine the question as to the right of
the party *to testify*? When he gives his deposition or when it is
offered in evidence? Clearly the latter, for it is not until
then that a question can be made; it is not until then, that in
any judicial sense the fact, that one or the other of the par-
ties is dead or in life, can be at all known. Then too, we
must not forget, that while the statute in its prior sections
declares all persons competent to testify, it in the section un-
der consideration, introduces the exceptions in question, to
the effect, that one party shall not testify after the death of
the other, of facts transpiring before such death. The theory
of the general statute, innovating as it did so thoroughly upon
the rule of the common law, was, that light should not be ex-
cluded because it might come from a possibly interested source,
and hence, that these persons, the parties who were presumed
to know more about a transaction in dispute than all others,
should each be allowed to give their own version of the trans-
action, leaving the jury to judge of their credibility. But in
perfect harmony with this general theory, and in the utmost
accord with the reason of the law, it was deemed wise to pro-
vide, that if one could not by reason of death, give his ver-
sion, neither shall the other. The want of opportunity to as-
sist in the preparation of the cause by the decedent is not
the sole ground for excluding the testimony of the survivor,
nor by any means the principal ground. The prime reason is
found in the inability of the party to oppose his statements,
his testimony, to that of the surviving adversary. And this
has been more than once announced as the reason of the law.
*Watson* v. *Russell*, 18 Ia. 80; *Bradley* v. *Kavanagh*, 12 Ia.
273; *Roman* v. *Hay's adm'r, Id.* 270; *Shaffer* v. *Dean, ante*
144." This case was decided in 1870.

In the case of *St. Clair* v. *Orr*, 16 Ohio St. 220, it
was held by the Supreme Court of the State of Ohio, that
" where a party to an action, being a non-resident of the
county wherein the action is pending, causes his deposition
in the case to be taken and filed, and afterwards, and before
trial, the opposite party dies, and his personal representative

is substituted in his place, such deposition is inadmissible in evidence on the trial, to the same extent as the oral testimony of the surviving party would be, if offered on the trial." This case was decided in 1865.

Within the meaning of the said second exception contained in said section 23 it seems to me, that a party testifies in his own behalf at the time his deposition taken in his own behalf, is used on the trial in a case at law or in a case in chancery, is read at the hearing of the cause and not at the time, when the deposition was written down; and that if the deposition of a party is so taken and filed, whether taken and filed in the lifetime of the testator or not, as to any communication or transaction had by him personally with a decedent, such testimony is not competent to be used or to be read against a defendant, who is administrator of such decedent in a case at law or in chancery, except in a case provided for by the last clause of said second exception or the third exception contained in the said 23d section. I think, that the want of opportunity to assist in the preparation of the cause by the decedent is not the sole ground for excluding the testimony of a party in his own behalf as to any communications or transactions had personally by such party with a decedent as against a defendant, who is administrator of such decedent, with the exceptions aforesaid. The principal reason is found in the inability of the decedent by reason of death to oppose his statements, his testimony, to the adversary whose deposition has been taken in his own behalf, or whose testimony is so offered in relation to such personal communications or transactions. I see no reason why the same rule does not or should not apply substantially in suits in chancery and actions at law, as to the deposition of a party under the said second and third exceptions contained in said 23d section.

But the deed from the plaintiff to said Sawtell conveying to Sawtell "all the right, title and interest" of the plaintiff in and to the real property, which is the subject of this suit, was made on the 23d of April, 1874, and admitted to record on the same day. And it is insisted, that the plaintiff at the time he gave his deposition, which was several months subsequent to the date of said deed, was not testifying in his own

behalf, but in behalf of said Sawtell, and so at the time parts of the deposition were suppressed as to the administratrix of Theodore Fink, deceased, which in fact was at the hearing of the cause. This suit was brought by plaintiff in his own name and for his sole use on the 4th day of April, 1873, more than one year prior to the said deed to said Sawtell ; and, as we have seen, the plaintiff 's bill was filed in the cause in August, 1873, nearly a year prior to the date of said deed. Sawtell is not a party to the record. The plaintiff and Sawtell for some reason or reasons best known to themselves, as we have seen, objected to said Sawtell being made a party plaintiff to this suit, and succeeded in their said objections in the court below. The only party plaintiff to the record in the court below was the plaintiff James W. Zane ; and the cause having been decided against him by the dismissal of his bill, he appealed to this Court. This suit was prosecuted in the court below by the plaintiff throughout, as though it was his suit and for his benefit ; and there is nothing in his said deposition to indicate otherwise, or from which the contrary may or can be inferred ; and so as to all the other depositions of witnesses.

The question, whether the plaintiff had passed his entire interest in said property to said Sawtell, was in fact not put in issue in the cause in the court below. The effect of the decision of the court below was, that under the circumstances stated in the answers to the rule the rule should be and was discharged. Neither Sawtell nor the plaintiff in his answer to the rule admits, that the plaintiff had in fact parted with his interest in said property, nor is it stated or claimed in either of said answers, that Sawtell claimed or was entitled to said property in whole or in part by virtue of said deed. If Sawtell had been made a party plaintiff to the suit by proper bill, it is to be presumed, that such bill would have stated his interest in the subject of the suit, and then the whole matter of interest of Sawtell as well as of the plaintiff could have been put in issue, seen and passed upon by the court intelligently and satisfactorily. But, as we have already seen, both plaintiff and said Sawtell successfully refused this course, and chose and preferred, that the suit should proceed in the name of the plaintiff as his suit to final determination. I do not mean to

indicate, that if said Sawtell had made himself a party plaintiff in the cause, it would then have been competent to read the supposed parts of said deposition against the personal representative of the said Theodore Fink, deceased.. I express no opinion on that subject, because not neccessary in this case.

Under the circumstances and the fact, that said James W. Zane was and continued to be the only plaintiff to the record in the cause and of course the only person as such liable to the costs, it seems to me, that the court below could regard him only as the plaintiff in the cause before it up to the time of the decision of the cause without regard to the relations, which may in fact have existed between him and said Sawtell, either at the time plaintiff's deposition was taken, or when the said deposition was suppressed by the court. And under all the circumstances the court below on the motion to. suppress the deposition of the plaintiff ought not to have overruled the same, upon the ground that the plaintiff after the commencement of the suit had become only a formal party to the suit. To have done so under the circumstances would have been to allow an unauthorized evasion of the statute in such a case. But again it seems to me, if there were no other objection to said deposition, that John Fink being the grantee of said Theodore Fink must be considered as embraced and included in the word "assignees" contained in the statute. It is true, the grantees are not named in the said second exception, but still they are within the reason thereof. (*Mattoon* v. *Young*, 45 N. Y. 696). The deposition of said John Fink the grantee of Theodore Fink, deceased, was taken and read in the cause as evidence, and in so far as the deposition of said John Fink speaks in regard to a conversation or transaction between the plaintiff and said Theodore Fink, deceased, the deposition of the plaintiff might perhaps be read, if there was nothing else in the way, in so far as it relates to the same conversation or transaction, but not as to any other conversations or transactions between the plaintiff and said Theodore, deceased, under the last clause of said exception two. So much of the said deposition of the plaintiff, as was suppressed as to the defendant, Angeline P. Fink, as administratrix of said Theodore, deceased, as. relates to communications and transactions between plaintiff and said Theodore Fink, deceased, to which

said John Fink, as before stated, does not testify in his deposition, cannot therefore be read in this Court under the circumstances against said John Fink, though the court below did not suppress any part of said deposition of plaintiff as to said John Fink. (*French* v. *French,* 14 W. Va. 505.)

*The said third assignment of error considered.* Parol evidence can not be admitted to vary or add to a deed as a general rule; but if a grantee in a deed has procured it by fraud, he will be held by a court of equity to be a trustee of the real owner; or if land purchased with the funds of one party is conveyed to another, the grantee will be held a trustee for the real purchaser; or if the scrivener of a deed has made a mistake in drafting it, a court of equity will correct such mistake; or a deed absolute on its face may be shown by parol evidence to be a mortgage to secure a loan or a precedent debt. These however ought to be regarded not properly as exceptions to the general rule but as cases, to which this rule has no proper application. If a party obtains a deed without any consideration upon a parol agreement, that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds, and the general rule, to permit parol evidence to establish such a trust. But if a party obtains a deed without any consideration upon a parol agreement, that he will hold the land in trust for a third party, such a trust so proven will be enforced in a court of equity; as to permit a party to hold the land so obtained for his own use would be to permit the grantee to commit a fraud. (*Troll et al.* v. *Carter et al.,* 15 W. Va. 567.) Though a deed be absolute on its face, the real nature of the transaction can be proven by parol evidence or surrounding circumstances and the deed will be held to be a mortgage. The following circumstances have great weight in determining, that a deed absolute on its face is a mortgage: First, Where the parties admit, that the grantor owes after the execution of the deed the consideration of the land to the grantee as a debt. Second, If this alleged consideration is grossly inadequate. Third, If the vendor remains in possession of the land for many years without the payment of any rent. A deed absolute on its face, if shown to have been originally a mortgage by parol proof and

the surrounding circumstances, may be declared a mortgage, though the land has passed into the hands of a grantee who paid no consideration for the land, or into the hands of a purchaser for valuable consideration, who had notice of the character of the original transaction. *Lawrence et al.* v. *DuBois et al.*, 16 W. Va. 443.

In the case of *Hardman* v. *Orr et ux.*, 5 W. Va. 71, it is stated in the syllabus: "1. H, desirous of providing for the comfort of a natural daughter, procured H. H. to purchase land in his own name and have it conveyed to him, to be held by him a reasonable time, and then to be conveyed directly to the natural daughter. H. furnished the money to pay for the land, and the daughter entered into possession of the same. H. deceased shortly thereafter, and H. H. sometime thereafter without having made the deed. Bill brought against widow and infant heirs of H. H. to compel conveyance to the natural daughter. *Held:* I. Where the land was paid for with the money of H. and the legal title vested in H. H., the trustee for the benefit of the natural daughter, a perfected and complete gift was made to her, which may be enforced against the trustee and his heirs. II. It is competent to prove the object of the trust by parol evidence."

In the case of *Nease* v. *Capehart, ex'r*, 8 W. Va. 95, it was held, that "when a debtor has conveyed land to a trustee to secure a debt, and afterwards another person and the debtor agree, that the former shall purchase the land and hold it as a security for the purchase-money he pays, and accordingly the debtor acquiesces and the other purchases the land, the transaction constitutes a trust, which a court of equity will enforce." See also *Fluharty* v. *Beatty*, 4 W. Va. 514.

In *Houston* v. *McCluney*, 8 W. Va. 135, it was held, "when two joint tenants of real estate agree with each other, that one shall with his own money erect improvements on the real estate jointly held, and have a lien on the interest of the other for the money so expended, the agreement with the actual erection of the improvements by the one and the acquiescence of the other constitutes such a lien as will be recognized and enforced in a court of equity."

I have cited the above named cases decided by this Court, because some of them bear directly upon the plaintiff's case

made by his bill, and others of them bear thereon more re-
motely.    In fact some of the cases cited above in the opinions
of the Court bear strongly upon every phase of this case,
whether upon the allegations of the bill or the pleadings and
evidence.    Under the principles decided in said cases, if the
proofs sustained the allegations of the bill, the plaintiff would
be entitled to relief.

After having patiently examined and considered the author-
ities above cited and all others cited by counsel on either side,
and after a most patient and thorough examination of all the
pleadings and evidence in this cause my conclusion is, that
under the pleadings and evidence in the cause and the laws,
principles and rules governing courts of equity the plaintiff is
not entitled to the relief prayed in his bill in whole or part—
that in fact the material allegations of the bill are not sup-
ported by the proofs.    The evidence, I think, proves, that the
consideration of $4,000.00 mentioned in the said deed from
plaintiff and his wife to Theodore Fink for the land involved
in this suit was greatly less than the value of the land at the
date of the deed.    The evidence also proves, that the family
of the plaintiff have remained upon the property conveyed
ever since the date of said deed and have received and enjoyed
the rents and profits of the property, except that for a part of
the time between the date of said deed and that of said Theo-
dore Fink, deceased, he occupied a part of the dwelling-house
and made some addition to the part he occupied at some ex-
pense to himself.    But said Theodore does not appear to have
enjoyed or received any benefit from any other part of the prop-
erty, the whole benefit of all the residue of the property hav-
ing been used and enjoyed by the plaintiff's family composed
of his wife and children during that time; and from the time
Theodore left, the plaintiff's said family occupied the property.
It is true, that the plaintiff resided with his family, when at
home, and in that way of course received some benefit from
the property; but he does not seem to have taken control of
the property, but the same seems to have been controlled and
used by the plaintiff's wife and children.

While these facts are true, so far as they are evidence in the
causes till it seems to me, that, when taken in connection
with all the other evidence in the cause and facts proven, the

said deed from the plaintiff to said Theodore was not intended to operate as a mortgage in the sense or character charged in the bill, or that the plaintiff should have or retain any interest in the property after the date of the said deed to said Theodore. I think from the evidence and facts, that the true purpose of said deed as understood by all the parties to it at the time of its execution was three fold : 1st, To divest the plaintiff of all right or interest in the property ; 2d, To secure the said Theodore as to the debts of plaintiff in the said deed mentioned and perhaps any other debts of plaintiff, which he might pay; and 3d, That the balance of the property, after the last named purpose should be accomplished, should be held in trust by the said Theodore for the use and benefit of the plaintiff's wife and children, that they might have a home and some means of support.

It appears, that the plaintiff had derived the tract of land of twenty-two acres from his father; that he had become excessively intemperate, wasteful and reckless of his property; that prior to the said deed to Theodore he had sold and conveyed away some eight or nine acres of valuable land of the said twenty-two acres and had squandered the proceeds of the sale thereof; and had besides become largely indebted and had encumbered the unsold part of the land by deeds of trust for debts of considerable amounts; and had become otherwise indebted. It further appears, that at the date of the said deed to Theodore Fink the property conveyed to him was about to be sold under a deed-of-trust, and in all probability would have been sold at a sacrifice thereunder, but for the said conveyance to said Theodore, and the arrangement in that deed specified as to said lien-debts. In a word it seems to me, that the transaction and deed to said Theodore was a family arrangement made with the view of putting it out of the power of the plaintiff to further squander and waste the residue of his property, and to save the same for the use and benefit of his wife and children, so far as it might remain after the indemnification of said Theodore as aforesaid. This family arrangement with the reasons for it in some aspects is not unlike that in the case of *Johnston* v. *Zane's trustees et als.*, 11 Gratt. 552. It further seems to me, that the said John Fink in receiving the conveyance from the said Theodore took the same for the same

purpose and with the same trust, that said Theodore held it. The purposes and objects of Theodore, the brother, and the said John Fink, the father of the plaintiff's wife, in this matter were laudable and praiseworthy, as it seems to me.

The conclusions to which I have arrived as to the object and purposes of said deed as above announced have been reached after the devotion of much time to the examination of all the pleadings and evidence in the cause. I have carefully examined the deposition of the plaintiff; and I am free to say, that said conclusions so arrived at could not be different, even though the whole of said deposition of the plaintiff were read and given only such weight and force, as it should have, when read, considered and weighed in connection with all the facts and evidence in the cause.

For the foregoing reasons it seems to me, there is no error in the decree of the circuit court of the county of Ohio rendered in this cause on the 7th day of December, 1878, and the same must therefore be affirmed with costs and $30.00 damages.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREE AFFIRMED.